**Abelardo BAEZ, Angel Baez, Plaintiffs–Appellants,**

v.

**WELLS FARGO ARMORED SERVICE CORP., a corp. doing business in the State of Florida, Defendant–Appellee.**

No. 90–5738.

United States Court of Appeals, Eleventh Circuit.

Aug. 9, 1991.

Edna E. Canino, Miami, Fla., for plaintiffs-appellants.

Joseph M. Freeman, Atlanta, Ga., for defendant-appellee.

Before ANDERSON and DUBINA, Circuit Judges, and GIBSON *, Senior Circuit Judge.

PER CURIAM:

Appellants in these consolidated cases appeal from the district court's order granting summary judgment in favor of appellee Well Fargo Armored Service Corporation ("Wells Fargo"). Appellants, all former Wells Fargo employees, argue that the district court erred in concluding that appellants were exempt from the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. Because we agree with the district court that appellants fall within the exemption of 29 U.S.C. § 213(b)(1), we affirm.

The appellants, whose cases were all consolidated in the district court under Fed.R. Civ.P. 42, filed suit alleging that Wells Fargo failed to pay them overtime compensation during certain periods of their employment in violation of the Fair Labor Standards Act. The facts are not in dispute and were well stated by the court below:

1. The Plaintiffs in these consolidated cases were formerly employed by the Defendant primarily as driver-guards, messenger-guards and/or and [sic] guards, with employment duties that took place within thirty-five miles of the Defendant's main branch office in Miami (Dade County), Florida.

2. The Defendant, during the relevant time periods of the Plaintiffs' employment, was engaged in security armored truck pickup and delivery services, involving the pickup and delivery of coins and currency, checks (both in-state and out-of-state checks), mail and other items of value, to and from service banks and commercial establishments, including the Federal Reserve Bank, the United States Postal Service and United Parcel Service, all within the Miami, Florida, area.

3. From October 1, 1984, until the end of their employment with the Defendant, the Plaintiffs consistently worked in excess of their forty-hour week, and were paid at a straight hourly rate for those excess hours, rather than at one and one-half times the regular rate, an amount to which the Plaintiffs claim entitlement and concerning which these consolidated actions are based.[9]

[9] Prior to October 1, 1984, the Defendant paid the Plaintiffs for overtime at the higher hourly rate, i.e., one and one-half times the regular rate, but ceased such practice in response to the advice of outside legal counsel, and in reliance upon the subsequent audits of the Wage and Hour Division (United States Department of Labor) accepting the payment of the lower (straight hourly) rate for Plaintiffs' overtime work.

*Baez v. Wells Fargo Armored Service Corp.*, No. 88–1602–Civ–Kehoe (S.D.Fla. July 31, 1990) (order granting summary judgment).

The sole issue in this case is whether appellants are exempt from the overtime provisions of the Fair Labor Standards Act under 29 U.S.C. § 213(b)(1). Section 213(b)(1) provides that such overtime compensation provisions "shall not apply with respect to ... any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49...."[1] Thus, the question in the instant case is whether the Secretary had such power with respect to appellants.[2]

The Secretary has the power to establish qualifications and maximum hours of ser-

---

1. 49 U.S.C. § 304 has been replaced by 49 U.S.C. § 3102. Section 3102 is substantially similar to § 304 and does not affect the exemption under 29 U.S.C. § 213(b)(1). *See Burris v. Bozzay Roadrunner Service,* 651 F.Supp. 36 (E.D.Mo.1986).

2. The operation of the § 213(b)(1) exemption is dependent on whether the Secretary has the power to regulate, not on whether the Secretary has actually exercised such power. *Galbreath v. Gulf Oil Corp.*, 413 F.2d 941, 944 n. 4 (5th Cir.1969); *Opelika Royal Crown Bottling Co. v. Goldberg*, 299 F.2d 37, 42 (5th Cir.1962).

vice for employees who (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the Secretary's jurisdiction under the Motor Carrier Act; and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act. 29 C.F.R. § 782.2(a) (citing *United States v. American Trucking Ass'n,* 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); *Levinson v. Spector Motor Service,* 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158 (1947)).

The parties agree that Wells Fargo, which holds a permit from the Interstate Commerce Commission, is a "contract carrier." As such, Wells Fargo is subject to the Secretary's jurisdiction under the Motor Carrier Act. *See* 29 C.F.R. § 782.1(b); *Brennan v. Schwerman Trucking Co. of Virginia, Inc.,* 540 F.2d 1200 (4th Cir.1976); *Starrett v. Bruce,* 391 F.2d 320 (10th Cir.), *cert. denied,* 393 U.S. 971, 89 S.Ct. 404, 21 L.Ed.2d 384 (1968). In fact, the permit issued by the ICC indicates that jurisdiction has already been exercised. *See Brennan,* 540 F.2d at 1204. Thus, it is clear that Wells Fargo is a motor carrier subject to the Secretary's jurisdiction.

Appellants argue that they were not engaged in activities of a character directly affecting the safety of operation of motor vehicles in interstate commerce within the meaning of the Motor Carrier Act. Appellants' argument has two prongs: that they

were not engaged in interstate commerce because their vehicles did not cross state lines, and that their employment did not directly affect the safety of operation of the vehicle. Appellants' argument is foreclosed by *Opelika Royal Crown Bottling Co. v. Goldberg,* 299 F.2d 37 (5th Cir. 1962).[3] In *Opelika,* our predecessor circuit held that drivers and driver-helpers engaged in intrastate transportation of empty soft drink bottles were exempt from overtime compensation under § 213(b)(1). Although the employees themselves traveled only intrastate, the empty bottles being transported were destined for a bottling plant in the neighboring state. In the instant case, the transported checks and other instruments were bound for banks outside the state of Florida. With regard to the effect on safety aspect, *Opelika* held that the driver-helpers did satisfy that requirement, relying on an Interstate Commerce Commission report concluding[4] that "guards on armored bank trucks ... performed services which affect the safety of the vehicle." *Opelika,* 299 F.2d at 43.

We conclude that *Opelika* controls the instant case. Accordingly, the judgment of the district court is

AFFIRMED.

---

**3.** This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

**4.** The same conclusion now appears in a regulation to which we owe deference, 29 C.F.R.

§ 782.4. *See Levinson v. Spector Motor Service,* 330 U.S. 649, 67 S.Ct. 931, 943, 91 L.Ed. 1158 (1947). The regulations also support the interstate commerce aspect of *Opelika's* holding. *See* 29 C.F.R. § 782.7.