Alexis **HERMAN,** Secretary of Labor, United States Department of Labor, [Substituted as Plaintiff for Robert Reich, resigned], Plaintiff,

v.

**SUWANNEE SWIFTY STORES, INC.,** Defendant.

No. 6:95–CV–68 WLS.

United States District Court, M.D. Georgia, Thomasville Division.

Sept. 30, 1998.

---

John A. Black, U.S. Department of Labor, Office of the Solicitor, Atlanta, GA, for plaintiff.

Reginald J. Bell, Christine E. Howard, Atlanta, GA, for defendant.

## ORDER

SANDS, District Judge.

The above-styled action ensued when the Secretary of Labor sought to compel the defendant to pay various employees certain amounts allegedly due as unpaid overtime compensation. Presently before the Court are the defendant's Motion for Summary Judgment (Doc. No. 17) and the plaintiff's Motion for Partial Summary Judgment (Doc. No. 21). For the reasons below, the defendant's Motion for Summary Judgment is hereby denied and the plaintiff's Motion for Partial Summary Judgment is hereby granted.

## BACKGROUND

During the period of April 23, 1992, to July 8, 1993, ("relevant period") Suwannee Swifty Stores, Inc., ("Suwannee") owned and operated a chain of approximately 215 food stores under the name Suwannee Swifty. The stores sold food and household supplies. Some stores had delis and some sold gasoline. *Robbins' Decl.* ¶¶ 4, 5. During the relevant period, the managers had one or more clerks. Suwannee paid store clerks on an hourly basis which included overtime compensation at the proper rate. *Def.'s Ex. 2.* Store managers were paid under a different pay plan. From April 1992, through July 1993,[1] the store managers received compensation through commissions representing 11.2% of the store's sales less the payroll for those clerks who worked at each particular store. *Robbins' Decl.* ¶ 3. The plan further provided that if a manager's computed "commissions" equaled less than $6.38 per hour for all hours worked by the manager in that work week, Suwannee would supplement the manager's pay to bring it up to $6.38 per hour. *Robbins Decl.* ¶ 6; *Def.'s Ex. 1.* This guaranteed rate of $6.38 approximated one and one half times of the current minimum wage ($4.25). During the relevant period, Suwannee computed "commissions" and paid store managers on a weekly basis. However, according to Plaintiff, Defendant did not pay store managers an additional pay above their regular rate as overtime for the hours they

---

1. On July 15, 1993, Suwannee changed its compensation plan to a fluctuating work week.

worked in excess of forty hours during any workweek. *Robbins' Decl.* ¶ 8. Store managers' duties included transporting checks drawn on out-of-state banks to the local bank and transporting to the post office various cash and sales reports, invoices, and receipts to be mailed to Defendant's headquarters in Quitman, Georgia. *Pl.'s Ex. A* (Affs. of Mgrs). When transporting such checks and mail, store managers used their personal vehicles.

The Department of Labor ("DOL") reviewed Suwannee's payrolls in March 1993. *Def.'s Ex.* 4. Suwannee asserted that it did not need to pay its store managers overtime because it conformed with the requirements of section 7(i) of the Fair Labor Standards Act ("FLSA").[2] The report prepared by Labor Investigator Robbins did not contest that the store managers' regular rate of pay exceeded one and one-half times the minimum hourly rate. *Def.'s Ex.* 4. The report also did not contest that more than half of the store managers' compensation for a representative period represented commissions. *Def.'s Ex.* 4. While Suwannee submits that it did not violate FLSA, Investigator Robbins concluded that Suwannee did violate FLSA because, under his analysis, the store managers' commissions seldom exceeded the guarantee and therefore was not a bona fide commission rate. *Def. Ex.* 4. Plaintiff alleges that Defendant did not obtain an order, ruling, or interpretation from the Administrator of the Wage and Hour Division of the U.S. Department of Labor upon which it relied in paying its store managers pursuant to its Store Manager Compensation Plan.

The defendant has moved for summary judgment, contending that it is undisputed that Suwannee clearly met the requirements of the exception. The plaintiff contends that it is entitled to partial summary judgment because Defendant admitted to failing to pay overtime as required under section 7(a) of the Act and the undisputed facts show that

Defendant is not entitled to any exception under FLSA.

## DISCUSSION

### I. SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Court is required to "resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his or her favor." *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993) (quotations and citations omitted).

The moving party carries the initial burden of showing that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The substantive law governing the case determines which facts are material, and "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). For issues on which the non-movant bears the burden of proof at trial, the moving party "simply may show—that is, point out to the district court—that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case." *Fitzpatrick,* 2 F.3d at 1116 (quotations and citations omitted).

If the moving party fails to overcome this initial burden, the Court must deny the motion for summary judgment without consider-

---

**2.** Generally, an employer must pay a higher rate of compensation when its employees work more than forty hours a week. However, under an exception provided in FLSA § 7(i), a retail store employer can avoid paying overtime if: (1) the regular rate of pay for the employee is more than

one and one-half times the minimum hourly rate, and (2) more than half of his compensation represents commissions on goods or services when using a bona fide commission rate. 29 U.S.C.A. § 207(i) (1965 & Supp.1994).

ing any evidence, if any, presented by the non-moving party. *Fitzpatrick*, 2 F.3d at 1116. If, on the other hand, the moving party overcomes this initial burden, then the non-moving party must show the existence of a genuine issue of material fact that remains to be resolved at trial. *Id.* Moreover, the adverse party may not respond to the motion for summary judgment by summarily denying the allegations set forth by the moving party. Rather, the adverse party "must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e).

## II. THE EXEMPTION OF OVERTIME UNDER FLSA § 7(i)

■■■ As a general rule, the Fair Labor Standards Act ("FLSA") provides that employees are entitled to receive overtime pay at one and one-half times their regular rate for all hours worked in excess of forty per week. 29 U.S.C.A. § 207(a)(1) (1965 & Supp. 1994). In section 7(i), the statute provides an exception [3] for employees working in a retail or service establishment if (1) the regular rate of pay for the employee is more than one and one-half times the minimum hourly rate, and (2) more than half of his compensation represents commissions on goods or services. 29 U.S.C.A. § 207(i) (1965 & Supp. 1994). To determine the proportion of compensation which represents commissions, "all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee." *Id.*

The DOL asserts that Suwannee failed to maintain a "bona fide commission rate" for certain store managers because it did not comply with 29 C.F.R. § 779.416(c). As the terms of the statute do not define the meaning of a "bona fide commission rate," the

Secretary's official interpretation of the term provides:

> A commission rate is not bona fide if the formula for computing the commissions is such that the employee, in fact, always or almost always earns the same fixed amount of compensation for each workweek (as would be the case where the computed commissions seldom or never equal or exceed the amount of the draw or guarantee).

29 C.F.R. § 779.416(c). The DOL contends that section 779.416(c) requires the employee's commissions to exceed the guarantee more than *seldom* in order for the commissions to be based upon a bona fide commission rate.

■■■ Suwannee contends it is undisputed that Suwannee complied with the two requirements of section 7(i) of FLSA.[4] Suwannee argues, instead, that this Court should not consider section 779.416(c) because: (1) it contradicts Congress' express intent; (2) the agency's interpretation is unreasonable; and (3) the Secretary did not follow the appropriate procedures in promulgating section 779.416(c).

### A. Whether the Secretary's Interpretation of "Bona Fide Commission Rate" Contradicts Congress' Intent

The first theory Suwannee advances is that the Secretary's interpretation of bona fide commission rate found in section 779.416(c) contradicts the explicit language Congress created in section 7(i). Section 7(i) states: "In determining the proportion of compensation representing commission, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee." The Secretary of Labor interpreted that provision of the statute to mean that a commission rate did not

---

**3.** It is important to note that the employer bears the burden of proving it is entitled to any exemption. Moreover, any exemption to overtime is construed narrowly, against the employer. *Avery v. City of Talladega*, 24 F.3d 1337, 1340 (11th Cir.1994).

**4.** First, Suwannee asserts that the regular rate of pay of the managers at Defendant's stores exceeded one and one-half times the minimum hourly rate. Second, it contends that more than half of the store managers' compensation for a representative period represented commissions from the sale of goods.

qualify as "bona fide" if the employee's commissions seldom or never equaled the amount of the guarantee. Suwannee Swifty contends that according to the language "without regard to whether the computed commissions exceed the draw or guarantee," the DOL is precluded from considering whether an employee has ever met the amount of his guarantee under the commission plan when it determines whether a commission rate is bona fide. The defendant contends the legal issue for the Court to consider is whether section 779.416(c)'s interpretation of "bona fide" should be given any legal weight because the regulation ignores the wording of the statute.

■ The first step this Court must determine is whether "Congress has directly spoken to the precise question at issue." *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). The first premise of statutory construction is to examine the plain language of the statute. "When the language of a statute is clear and unambiguous and conveys a clear and definite meaning, the statute must be given its plain and ordinary meaning." *Mike Smith Pontiac, GMC, Inc. v. Mercedes–Benz of North America, Inc.,* 32 F.3d 528, 531 (11th Cir.1994) (quotations and citations omitted). Congress did not define what should be considered a "bona fide commission rate." Moreover, the plain meaning of "bona fide" gives little direction; "bona fide" simply means acting "[i]n or with good faith." Black's Law Dictionary 177 (6th ed.1990). In looking at the express language of the statute, this Court finds no evidence that when determining whether the commission rate is set in good faith, the DOL is precluded from considering whether the employees' computed commissions ever exceed the draw. Section 7(i) simply ensures that even commissions which do not exceed the guarantee will still be counted as commissions. The DOL has recognized this requirement in section 779.416(b), which states: "[u]nder a bona fide commission plan all of the computed commissions will be counted as compensation representing commissions even though the amount of commissions may not equal

or exceed the guarantee or draw in some workweeks." Congress, however, has provided that to use this commission-based exception, the commission rate must be set in good faith. Congress has not expressed any limitations in the statute as to what can be considered when deciding whether a commission rate is, indeed, bona fide.

Next, the court must examine the statute's legislative history and determine whether it resolves this issue. *Royal Caribbean Cruises, Ltd., v. United States,* 108 F.3d 290, 293 (11th Cir.1997). The legislative history is not very helpful as to this part of the statute. Even the defendant admits that there is minimal history on these particular amendments and the only comments to the amendments mirrors the actual language in the Act. The defendant asserts that because of this, there is no legal or factual basis for the DOL's reliance on its interpretation. This logic is backwards. Had Congress explicitly addressed the issue, this Court would be precluded from looking to the agency's interpretation. Instead, this Court would look to the direct intent of Congress. Because, as the defendant clearly points out, there is no direction by Congress, this Court should look to whether the agency's determination is a reasonable interpretation of the statute. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

*B. Whether the Agency's Interpretation is Reasonable*

As this Court finds neither the explicit language of the statute nor the legislative history has spoken as to what constitutes a bona fide commission rate, this Court must next determine whether the agency's interpretation is "based on a permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782. Suwannee argues that the DOL's position is neither reasonable, practical, nor legally justifiable. The defendant argues that as long as "the computation used to produce commissions in fact produces what is customarily recognized as commissions," then the commission rate is automatically "bona fide." However, to show that the agency's interpretation was not based on a

permissible construction, the defendant cannot simply point to another interpretation that it would prefer.

It appears that Suwannee also argues DOL's interpretation was not based on a permissible construction. The defendant asserts that when determining whether an employer used a bona fide commission rate, the DOL cannot consider whether an employee could meet the amount of the guarantee. This Court disagrees—such an interpretation of this statute is too broad. Congress addressed what should be considered as commissions, which differs from whether a commission rate is bona fide. Congress did not state that any commission rate was fine as long as it used the above two requirements. Instead, it limited the exception to ensure employers would create a commission rate in good faith. Since Congress did not specify a definition of "bona fide" for this section, the DOL did so through section 779.416(c). The DOL's interpretation is consistent with the purpose of passing an exception to overtime by paying commissions. The whole premise behind earning a commission is that the amount of sales would increase the rate of pay. Thus, employees may elect to work more hours so they can increase their sales, and in turn, their earnings. When a commission plan never affects the rate of pay, the purpose behind using a commission rate also fails.

In the case at hand, the number of hours worked, rather than the amount of sales, determined most managers' pay. The defendant's interpretation of the statute would defeat the purpose behind creating a commission exception to overtime. Moreover, by adopting the defendant's interpretation of the word "bona fide commission rate," any employer in the service or retail business section could create a "commission rate" and set it to ensure that their employees' pay would never meet the guaranteed rate, thus protecting themselves from paying overtime consistent with the purposes of the Act. Further, the DOL could never review whether it was even possible to exceed the guaranteed rate. In fact, in the case at hand, nearly 70% of all store managers never received more than the guaranteed rate of $6.38 per hour

for all hours worked during the entire period in question. *Robbins' Decl.* ¶ 13. The DOL's interpretation is consistent with and promotes the purposes of the creating a commission-based exception. Their interpretation ensures that employers use a commission rate that has the ability to affect one's pay—not merely creating a loophole around not paying overtime compensation. Therefore, this Court finds that DOL's interpretation was not based on an impermissible construction and section 779.416(c) can be used to define "bona fide commission rate."

### C. Whether 29 C.F.R. § 779.416(c) is an Interpretative Rule

 Section 4 of the Administrative Procedure Act, 5 U.S.C. § 553, requires an agency to give all interested citizens general notice and a chance to participate in the rule-making before a substantive rule is promulgated. However, "interpretative rules, general statements of policy or rules of agency organization, procedure or practice" are exempt from these requirements. *Chrysler Corp. v. Brown,* 441 U.S. 281, 313–14, 99 S.Ct. 1705, 1723–24, 60 L.Ed.2d 208 (1979). The defendant argues that this Court should not consider section 779.416 because it is really a legislative rule, not an interpretative rule, which was not published in accordance with the APA.

 An interpretative rule is the administrative officer's statements as to what he or she thinks the statute or regulation means. *Jean v. Nelson,* 711 F.2d 1455, 1478 (11th Cir.1983). It is a "clarification or explanation of existing laws or regulations rather than a substantive modification [of existing regulations] or adoption of new regulations." *Id.* The defendant attempts to use *Jean v. Nelson* as a guide to determine that the policy at issue in this case is also creating new regulations. In *Jean,* the INS' policy was considered to be rule-making when the INS completely changed its policy from rarely detaining immigrants to preferring detention of undocumented aliens. However, this change in policy was not written down and varied depending on the person who applied it. *Id.* The case at hand is quite different. Here, the Secretary of Labor simply gave

employers some direction as to what it considered would not constitute a "bona fide" commission rate, explaining that it does not consider a commission rate which would seldom or never affect an employee's rate of pay as a commission rate contemplated in good faith. This definition does not impose additional requirements or substantively modify section 7(i). Moreover, as recognized in *Brennan v. Goose Creek Consol. Indep. Sch. Dist.*, 519 F.2d 53, 56 (5th Cir.1975),[5] section 779 is "meant to state the Department of Labor's official interpretation of the Fair Labor Standards Act." *See also* 29 C.F.R. § 779.0. The Eleventh Circuit has used the agency's definitions to determine how to apply other ambiguous terms in reference to the FLSA. *See Avery v. City of Talladega*, 24 F.3d 1337, 1344 (using 29 C.F.R. § 785.19(a) to determine whether bona fide meal plan was compensable time). Therefore, this Court finds section 779.416(c) is only meant as an interpretative rule, which does not need to be promulgated through the same procedural requirements as a substantive rule.

### D. Applying Section 779.416(c)

As discussed above, under section 779.416(c) a commission rate is not considered "bona fide" if "the rate of computed commissions seldom or never equal or exceed the amount of the ... guarantee." The Defendant argues that it did not violate 779.416(c) because the pay fluctuates depending on the hours or the commission. Suwannee also asserts that if a manager received commissions which exceeded the guarantee more than once a week out of a year, this would be sufficient to meet the requirements. The DOL has moved for a partial summary judgment, asserting that if a manager's commission rate exceeded the amount of the guarantee "fewer than five weeks" out of a year, then the commission rate was not a bona fide commission rate as a matter of law.

This Court finds that when the commission rate is always less than the amount of the guarantee, then the commission rate is clear-

ly not "bona fide." Moreover, if a manager exceeds the guaranteed rate only once in a year and the amount of the commissions only marginally increases the employee's annual earnings, as in this case, this also could not reasonably be considered a bona fide commission as required by section 7(i). However, as this is a motion for summary judgment and all inferences are drawn in favor of the non-moving party, the Court declines to extend a "fewer than five" interpretation of the DOL. Instead, the Court will wait to make such a finding until the evidence in the record is more fully developed. Therefore, the Court grants the plaintiff's motion as to the issue that the defendant did not comply with the requirements of section 7(i) for any store managers who never received more than the guaranteed rate or received the guaranteed rate only once a year.

### III. THE EXEMPTION UNDER FLSA § 13(b)(1)

Section 13(b)(1) provides an exemption of the FLSA overtime provisions for employees who are subject to the Secretary of Transportation's power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49. 29 U.S.C. § 213(b)(1). Section 31502(b) delegates to the Secretary of Transportation the power to regulate employees of a motor private carrier. 49 U.S.C. § 31502(b). A motor private carrier is defined as "those that are neither common nor contract carriers, and that (1) transport property by motor vehicle in interstate commerce; (2) are the 'owner, lessee, or bailee of the property being transported'; and (3) transport the property 'for sale, lease, rent, or bailment, or to further a commercial enterprise.'" *Friedrich v. U.S. Computer Serv.*, 974 F.2d 409, 412 (3rd Cir.1992) (citation omitted).

DOL has moved for a partial summary judgment asserting that Suwannee cannot establish this exception, specifically asserting that Suwannee is not a "motor private carrier." The defendant contends that its store managers are exempt from the

---

5. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all deci-

sions of the former Fifth Circuit issued prior to October 1, 1981.

FLSA's overtime requirements because Suwannee managers delivered checks, including out-of-state checks, and sales reports in their private vehicles to the local bank and the local post office and thus were motor private carriers of property in interstate commerce.

The major issue in contention is whether the movement of these items constitutes "in interstate commerce." When a contract carrier picks up checks bound for out-of-state banks, the delivery of checks can constitute interstate commerce. *See Baez v. Wells Fargo Armored Service Corp.*, 938 F.2d 180, 182 (11th Cir.1991) (finding that the contract carriers' activities fall within the parameters of section 213(b)(1)). However, the case at hand has critical distinctions. In *Baez*, the owners of the checks had already clearly committed that property into the hands of another, namely the armored car service company, thus allowing the property to begin its journey in the stream of commerce. *Id.* In this current situation, however, the managers were driving their stores' own checks in their personal vehicles *with the intent* to place them into interstate commerce. Simply because the managers intended to place the property into interstate commerce does not mean the checks entered interstate commerce at that point. As recognized in *Coe v. Town of Errol*, 116 U.S. 517, 525, 6 S.Ct. 475, 477, 29 L.Ed. 715 (1886), the owner's state of mind in relation to the property, his intent, does not mean that the property has entered interstate commerce. *See also Champlain Realty Co. v. Town of Brattleboro*, 260 U.S. 366, 374, 43 S.Ct. 146, 147, 67 L.Ed. 309 (1922) (holding "[u]ntil actually launched on its way to another state, or committed to a common carrier for transportation to such state, its destination is not fixed and certain"). Goods are in "interstate ... commerce when they have 'actually started in the course of transportation to another State, or [are] delivered to a carrier for transportation.'" *Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 527, 31 S.Ct. 279, 288, 55 L.Ed. 310 (1911) (*quoting Coe v. Town of Errol*, 116 U.S. 517, 525, 6 S.Ct. 475, 477, 29 L.Ed. 715 (1886)). Until the checks are in motion for some place out of state or committed to the custody of a carrier for transportation to such a place, interstate commerce has not begun.

Suwannee automatically assumes that because its managers carried checks in their vehicles with the intent to deposit them with the local bank, they were transporting property within interstate commerce. The managers, however, are not carriers independent of the defendant, nor is the defendant a carrier in its usual course of business. Moreover, the defendant fails to point to any precedent which would advance its far-reaching legal theory. As this Court has previously recognized, the employer bears the burden of proving it is entitled to any exemption. Moreover, any exemption to overtime is construed narrowly, against the employer. *Avery v. City of Talladega*, 24 F.3d 1337 (11th Cir.1994). *See also Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 900 (3d Cir. 1991) (holding that it is the employer's burden to affirmatively prove that its employees come within the scope of the overtime exemption, and any exemption from the Act must be proven "plainly and unmistakably"). This Court declines to extend such a broad definition of "in interstate commerce" or to so define or describe the defendant's managers. Therefore, based on the reasons set forth above, this Court finds that a manager driving for a non-carrier employer with the intent to deposit checks with the local bank or mail to the local post office does not engage in interstate commerce in itself. The plaintiff's motion for partial summary judgment is granted as to this issue.

## IV. LACHES

The defendant asserts this Court should refrain from granting the DOL's Motion for Partial Summary Judgment under a laches theory. As held by the Supreme Court, "the Congressional statute of limitation is definitive." *See Holmberg v. Armbrecht*, 327 U.S. 392, 395, 66 S.Ct. 582, 583, 90 L.Ed. 743 (1946). DOL states that the statute of limitations applies in this case to bar recovery of back wages for periods before April 1992. Suwannee is not asserting that the statute of limitations has run. Instead, it is proceeding under a theory of prejudice, alleging that because two and half

years passed between the investigation and the law suit, many of their managers have left the company. Therefore, based on the above reason, this Court denies the defendant's theory that laches should apply to this case.

## V. ESTOPPEL

▉▉ The defendant asserts that DOL should be estopped from raising whether its compensation plan was in conformance with section 7(i) because other Wage and Hour Investigators found the managers' pay at Suwannee's stores in compliance. Generally, any estoppel argument against the government should rarely, if ever, be granted. *See Office of Personnel Management v. Richmond,* 496 U.S. 414, 422, 110 S.Ct. 2465, 2471, 110 L.Ed.2d 387 (1990) (stating "[w]e leave for another day whether an estoppel claim could ever succeed against the Government"). The Portal to Portal Pay Act, however, does provides for a good faith defense in this situation. 29 U.S.C. § 259. Therefore, this Court will review whether Suwannee can show its good faith reliance under the Portal to Portal Act.

## VI. GOOD FAITH RELIANCE UNDER THE PORTAL–TO–PORTAL ACT

▉▉▉ DOL has also moved for partial summary judgment, alleging that Suwannee cannot establish the defense of good faith reliance under the Portal–to–Portal Pay Act. Under the Portal–to–Portal Pay Act, the employer must "plead and prove that the act or omission complained of was: (1) in good faith; (2) in conformity with; and (3) in reliance on an administrative regulation, order, ruling, approval or interpretation of an agency of the United States." *Olson v. Superior Pontiac–GMC, Inc.,* 765 F.2d 1570, 1579 (11th Cir.1985); Portal to Portal Pay Act, 29 U.S.C. § 258. Even reliance on the oral advice of a compliance officer cannot serve as the necessary written administrative statement of its position. *Cole v. Farm Fresh Poultry, Inc.,* 824 F.2d 923, 930 (11th Cir.1987). Suwannee has failed to point to any administrative regulation, order, ruling, approval, or interpretation of an ·agency which would constitute good faith reliance.

Neither has it shown conformity with the regulation in question. Therefore, for the reasons above, the plaintiff's motion for summary judgment is granted as to the issue of the good faith reliance pursuant to Portal–to–Portal Act.

## CONCLUSION

This Court finds it may rely upon 29 C.F.R. § 779.416(c) to determine whether the defendant used a bona fide commission rate pursuant to FLSA § 7(i). Moreover, when the commission rate is always less than the amount of the guarantee or exceeds the guarantee once in a year with only an insignificant impact on salary, then the commission rate is clearly not "bona fide" as defined by the Secretary in section 779.416(c) and the defendant may be held liable for a failure to pay overtime. This Court finds that a manager driving for a non-carrier employer with the intent to deposit the employer's checks with the local bank or the employer's mail to the local post office is not entitled to an exemption under FLSA § 13(b)(1). Finally, this Court finds that the defendant is not entitled to either a defense of laches or a good faith reliance defense as provided in the Portal–to–Portal Pay Act. Therefore, for the above mentioned reasons, the plaintiff's Motion for Partial Summary Judgment (Doc. No. 21) is hereby **GRANTED** and the defendant's Motion for Summary Judgment (Doc. No. 17) is hereby **DENIED.**

This Court finds that a genuine issue of material facts exists as to (1) how much overtime compensation is due managers who never exceeded the guarantee or exceeded the rate only once in a year; and (2) whether managers who exceeded the guarantee more than once a year were paid a bona fide commission rate and, if not, the amount of overtime compensation they are due.

**SO ORDERED.**