[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-10659
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 28, 2011
JOHN LEY
CLERK

D.C. Docket No. 9:07-cv-80584-KLR

STEVEN ABEL,
on his own behalf and
all others similarly situated,

Plaintiff-Appellant,

versus

SOUTHERN SHUTTLE SERVICES, INC.,
a Florida Corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 28, 2011)

ON PETITION FOR REHEARING

Before CARNES, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Upon consideration of Plaintiff-Appellant's petition for panel rehearing, we vacate the prior opinion in this case, issued on September 21, 2010 and published at 620 F.3d 1272 (11th Cir. 2010), and substitute the following opinion in its place. In this opinion, we revise footnote six, but do not change the opinion in any other respect. Accordingly, Plaintiff-Appellant's petition for panel rehearing is granted in part and denied in part.

This is Plaintiff Steven Abel's second appeal to this Court. Abel, a former driver of Defendant Southern Shuttle Services, Inc.'s airport shuttle vans, filed this action on behalf of himself and others similarly situated for alleged violations of the overtime pay provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1). In the first appeal, this Court vacated the district court's entry of summary judgment in Southern Shuttle's favor because Southern Shuttle's airport shuttle service did not fall within the "taxicab exemption" to the FLSA's overtime provisions. See Abel v. S. Shuttle Servs., Inc., 301 F. App'x 856 (11th Cir. 2008). After remand, Southern Shuttle filed a second motion for summary judgment, arguing that its airport shuttle van drivers fall under the Motor Carrier Act

exemption in 29 U.S.C. § 213(b)(1). The district court agreed and granted

Southern Shuttle summary judgment. After review, we affirm.[1]

## I. BACKGROUND

Southern Shuttle operates a shared-ride airport shuttle, known as "SuperShuttle," that transports passengers to and from three South Florida airports (Miami International Airport, Palm Beach International Airport and Fort Lauderdale-Hollywood International Airport).[2] From December 19, 2005 to June 24, 2007, Abel worked for Defendant Southern Shuttle as a shuttle driver, driving passengers to and from airports. Abel, like all shuttle drivers, was paid commission and tips, but not overtime compensation. Abel's employment ended after he refused to transport a passenger with a payment voucher and made the passenger exit the shuttle van, in violation of Southern Shuttle's policy.

---

[1]We review de novo a district court's order granting summary judgment, construing all facts and drawing all reasonable inferences in favor of the non-moving party. Walter v. Am. Coach Lines of Miami, Inc., 575 F.3d 1221, 1226 (11th Cir. 2009), cert. denied, 130 S. Ct. 2343 (2010). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

[2]Southern Shuttle also provides transportation services in Broward County and operates "Passenger Motor Carrier vans" for the general public in Miami, but the record contains no additional information about these services. Abel does not appear to have driven vans for these services.

The shuttles are large nine- and ten-person passenger vans. The shuttles pick up passengers at one of the airports and take them to any location in the area (such as a residence, office or hotel), or pick them up at any location in the area and take them to one of the airports. Shuttle drivers do not transport passengers to or from locations outside of Florida. Some shuttle passengers are transported to the airports so they can travel via air carrier to other states or countries. Other shuttle passengers are transported from the airports after having flown from other states or countries.

Many shuttle passengers arrange for shuttle transportation by contacting Southern Shuttle directly. Passengers traveling to the airport make reservations ahead of time and schedule a trip to the airport. Similarly, passengers traveling from the airport check in at a SuperShuttle airport kiosk or counter or with a curbside representative to be assigned to the next available shuttle.

Southern Shuttle's president, Mark Levitt averred that: (1) "[a] large portion of the reservations made with Southern Shuttle are through internet package deals wherein a traveler buys a package deal from a third party company that includes airfare, hotel accommodations and transportation to and from the airport"; (2) "the traveler receives a voucher for free transportation to and from the airport and provides the voucher to Southern Shuttle in lieu of payment"; and (3) "Southern

4

Shuttle then prepares an invoice to the third party company for payment."[3]  These third party companies include internet travel web sites such as Expedia.com, Travelocity, Orbitz, CheapTickets, a German company called Viator, a company in the United Kingdom called Get a Bed, and American Express, among others.

## II.  DISCUSSION

### A.  FLSA's Motor Carrier Exemption

The FLSA requires employers to compensate employees at an overtime rate if they work more than forty hours during a workweek.  29 U.S.C. § 207(a)(1). The FLSA provides for a number of exemptions to the overtime provision.  See 29 U.S.C. § 213(b)(1)-(30).  We construe FLSA exemptions narrowly against the employer.  Walters v. Am. Coach Lines of Miami, Inc., 575 F.3d 1221, 1226 (11th Cir. 2009), cert. denied, 130 S. Ct. 2343 (2010).  The employer has the burden to show that an exemption applies.  Id.

The FLSA exempts from the overtime pay requirement "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49," otherwise known as the Motor Carrier Act ("MCA")

---

[3]We reject Abel's argument that Levitt was not competent to make this averment.  We agree with the district court that Levitt, as Southern Shuttle's president, had personal knowledge of Southern Shuttles's voucher arrangement with internet travel companies.

exemption. 29 U.S.C. § 213(b)(1). Whether the MCA exemption applies "is dependent on whether the Secretary has the power to regulate, not on whether the Secretary has actually exercised such power." Baez v. Wells Fargo Armored Serv. Corp., 938 F.2d 180, 181 n.2 (11th Cir. 1991). That is, for the MCA exemption to apply, the Secretary of Transportation's "power to regulate under the act merely needs to cover a particular group of employees." Walters, 575 F.3d at 1226.

Section 31502 of Title 49 authorizes the Secretary of Transportation to "prescribe requirements for . . . qualifications and maximum hours of service of employees of" a motor carrier or a private motor carrier. 49 U.S.C. § 31502(b)(1)-(2). Section 31502(a)(1) of Title 49 explicitly states that this provision in § 31502(b) applies to "transportation . . . described in" 49 U.S.C. § 13501. Id. § 31502(a)(1). In turn, § 13501 of Title 49 confers jurisdiction on the Secretary of Transportation over transportation by a motor carrier "on a public highway," to the extent passengers, property, or both are transported by motor carrier "between a place in . . . a State and a place in another State" or "a State and another place in the same State through another State." Id. § 13501(1)-(2).

This Court has interpreted the MCA's above statutory scheme. Walters, 575 F.3d at 1226-27. We have said that the MCA confers upon the Secretary of Transportation the authority "'to regulate the maximum hours of service of

6

employees who are employed (1) by a common carrier by motor vehicle; (2) engaged in interstate commerce; and (3) whose activities directly affect the safety of operations of such motor vehicles.'" Id. (quoting Spires v. Ben Hill Cnty., 980 F.2d 683, 686 (11th Cir. 1993)). "The applicability of the motor carrier exemption 'depends both on the class to which his employer belongs and on the class of work involved in the employee's job.'" Id. at 1227 (quoting 29 C.F.R. § 782.2, outlining the requirements for the MCA exemption). The Walters Court further instructed: "[t]here are two requirements for an employee to be subject to the motor carrier exemption": (1) "his employer's business must be subject to the Secretary of Transportation's jurisdiction under the MCA"; and (2) "the employee's business-related activities must directly affect the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." Id. (emphasis added, quotation marks & brackets omitted).

**B.      Secretary's MCA Jurisdiction over Southern Shuttle**

Abel argues that Southern Shuttle failed to show the first requirement of the MCA exemption. Abel argues that Southern Shuttle is not subject to the Secretary of Transportation's jurisdiction because (1) Southern Shuttle's airport shuttle service does not make or derive revenue from interstate trips, such that the

7

Secretary <u>could</u> exercise such jurisdiction and (2) the Secretary of Transportation has not <u>in fact</u> exercised jurisdiction over Southern Shuttle. However, even if the Secretary has not in fact exercised jurisdiction, the MCA exemption still applies so long as the Secretary has the authority to do so. <u>See</u> <u>Baez</u>, 938 F.2d at 181 n.2. Therefore, this appeal turns on whether the Secretary has jurisdictional power over Southern Shuttle.

Here, the parties agree the Secretary's jurisdictional power depends upon whether the employer's transportation service engages in more than de minimus interstate commerce.[4] Therefore we examine the interstate commerce question.

## 1. <u>Walters v. American Coach Lines of Miami, Inc.</u>

Our recent decision in <u>Walters</u> sheds some light on this question. The <u>Walters</u> employer was a bus company that had a contract with Royal Caribbean Cruise Lines to transport passengers to and from the ship ports and the Miami and Fort Lauderdale airports. <u>Walters</u>, 575 F.3d at 1224. The shuttle trip was included as part of the passengers' vacation packages booked though either Royal Carribean or a travel agent. <u>Id.</u> The passengers used vouchers to board the shuttle buses, and the bus company invoiced Royal Carribean for the trips. <u>Id.</u> The bus

---

[4]We assume <u>arguendo</u>, as did the Court in <u>Walters</u>, that the employer's interstate business must be more than de minimus in order for the employer to be subject to the Secretary's authority under the MCA. <u>See</u> <u>Walters</u>, 575 F.3d at 1228.

company had informal agreements with two other cruise lines to provide similar shuttle transportation. Id. The bus company also provided motor coach transportation, which included a small number of trips outside Florida, that generated about four percent of the revenue. Id. at 1225, 1227. Moreover, the bus company was licensed by the DOT and authorized to operate an interstate motor carrier. Id. at 1227.

The Walters Court rejected the plaintiffs' argument that interstate trips comprising 4% of revenue were de minimus. Id. at 1227-28. This Court noted that Morris v. McComb, 332 U.S. 422, 68 S. Ct. 131 (1947), as well as other cases, suggest that a company's interstate business is de minimus if it is less than one percent of its trips. Walters, 575 F.3d at 1228. The Walters Court expressed doubt that a de minimus requirement applied when the employer was licensed by the DOT and undisputedly engaged in "some transportation that crosses state lines." Id. Because in Walters the employer's trips across state lines satisfied the interstate commerce aspect of the first requirement of being subject to the Secretary's jurisdiction, the Court did not consider whether the purely intrastate trips between the cruise ships and airports satisfied that requirement.

However, in addressing the second requirement (whether the Secretary's jurisdiction extends to the employee's specific work-related activities), the Walters

Court considered whether driving intrastate airport-to-seaport routes "constituted interstate commerce." Id. This Court concluded that "purely intrastate transportation can constitute part of interstate commerce if it is part of a 'continuous stream of interstate travel.' For this to be the case, there must be a 'practical continuity of movement' between the intrastate segment and the overall interstate flow." Id. at 1229 (citations omitted) (quoting, inter alia, Walling v. Jacksonville Paper Co., 317 U.S. 564, 568, 63 S. Ct. 332, 335 (1943)). Noting that the fee for the airport shuttle would be "bundled as part of [passengers'] cruise vacation package," the Court concluded that "[f]or cruise ship passengers arriving at the airport or seaport, [the bus company's] shuttle rides would be part of the continuous stream of interstate travel that is their cruise vacation." Id. at 1230.

The Walters Court determined that the bus company's "common arrangements" with cruise lines, even where it had no formal contract, satisfied any "through-ticketing" requirement. Id. at 1234.[5] Citing agency interpretation

---

[5]A "through-ticketing" requirement, which is found in a number of agency determinations and some lower court decisions, states that the Secretary of Transportation has jurisdiction over an entity making intrastate passenger-carrying trips only where there is a "contractual connection" between the intrastate carrier and an interstate carrier for the "continuous passage" of the passengers. Walters, 575 F.3d at 1233-34. The Walters Court noted that court cases and agency determinations imposing a "through-ticketing" requirement were addressing the Secretary of Transportation's jurisdiction over the employer (i.e., the first requirement) and questioned "whether there would be a similar requirement for employees' activities to be in interstate commerce," (i.e., the second requirement). Id. "In an abundance of caution," the Court assumed that a through-ticketing arrangement must be shown with respect to the employees' work-related

10

that the employer need only show "a common arrangement with an out-of-state carrier" the Court concluded that this requirement is met "even when there is no through-ticketing agreement so long as there is evidence of a contractual connection between the motor carrier and the interstate carrier." Id. (quotation marks omitted).

Although Walters discusses the import of purely intrastate trips under the second requirement, its general conclusion that such trips are part of interstate commerce if they are "part of a continuous stream of interstate travel" informs our analysis under the first requirment. Under either requirement, the Secretary of Transportation's jurisdiction (over either the employer's transportation business or the employee's activities) turns on the scope of the MCA's interstate commerce requirement.

## 2.     Other FLSA Motor Carrier Exemption Cases

While Walters did not need to address intrastate trips under the MCA's first requirement, other cases have. For example, the Supreme Court's Morris decision involved a general cartage business that primarily transported steel around the Detroit area either within local steel plants or to and from local steel plants. 332 U.S. at 427, 68 S. Ct. at 133. A small percentage of the employer's trips, roughly

---

activities. Id. at 1234.

11

four percent, involved transporting miscellaneous freight to and from Detroit boat docks, railroad depots and freight terminals. Id. at 427 & n.7, 68 S. Ct. at 133 & n.7. Although these trips did not cross state lines, they nonetheless met the de minimus interstate commerce requirement because they transported freight "in interstate commerce, either as part of continuous interstate movements or of interstate movements begun or terminated in metropolitan Detroit." Id. at 427, 432-33, 68 S. Ct. at 133, 136.

Other cases make clear that trips within a single state are made in interstate commerce when they are part of "a practical continuity of movement of the goods" in interstate commerce. Walling v. Jacksonville Paper Co., 317 U.S. at 568, 63 S. Ct. at 335 (involving wholesale distributor of paper products made outside the state but transported only to customers within the state); see also Baez, 938 F.2d at 181-82 (involving armored trucks delivering to Florida banks checks and other instruments bound for banks outside Florida); Galbreath v. Gulf Oil Corp., 413 F.2d 941 (5th Cir. 1969) (involving oil company's transport within Georgia of petroleum products originating from refineries in Texas and Mississippi); Opelika Royal Crown Bottling Co. v. Goldberg, 299 F.2d 37 (5th Cir. 1962) (involving wholesale soft drink distributor transporting drinks bottled in Georgia from

Alabama warehouse to Alabama customers and returning empty bottles to Alabama warehouse, where other trucks took them back to Georgia).

The Third Circuit distinguished the transportation of passengers from goods. See Packard v. Pittsburgh Transp. Co., 418 F.3d 246 (3d Cir. 2005). The employer in Packard provided transportation to the elderly and disabled in Allegheny County, which included trips to train and bus stations and to the airport. Id. at 248-49. The Third Circuit concluded that this transportation service did not fall within the Secretary's jurisdiction because it was not "in practical continuity with a larger interstate journey." Id. at 258. Because Morris involved transportation of goods not passengers, the Third Circuit looked at cases arising in other contexts that defined interstate transportation of passengers, including United States v. Yellow Cab Co., 332 U.S. 218, 67 S. Ct. 1560 (1947), overruled on other grounds by Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 104 S. Ct. 2731 (1984), a Sherman Act case.

In Yellow Cab, the Supreme Court described interstate commerce as "an intensely practical concept drawn from the normal and accepted course of business." Id. at 231, 67 S. Ct. at 1567. Because "the limits of an interstate shipment of goods" may be different than "the commonly accepted limits of an individual's interstate journey," courts must "mark the beginning and end of a

particular kind of interstate commerce by its own practical considerations." Id. In light of these practical considerations, the Supreme Court concluded that, "in the absence of some special arrangement," a taxi ride to or from a railroad station at the beginning or end of an interstate journey ordinarily is a local trip that is not within interstate commerce. Id. at 231-32, 67 S. Ct. at 1567. However, where the railroad "contract[s] with the passengers to supply between-station transportation in Chicago," the taxi ride "is clearly a part of the stream of interstate commerce." Id. at 228, 67 S. Ct. at 1565-66. The Supreme Court explained that "[w]hen persons or goods move from a point of origin in one state to a point of destination in another, the fact that a part of that journey consists of transportation by an independent agency solely within the boundaries of one state does not make that portion of the trip any less interstate in character." Id. at 228, 67 S. Ct. at 1566.

Relying on the distinctions drawn in Yellow Cab, the Third Circuit noted that the transportation of the elderly and disabled in Packard "involves no joint fare or ticketing arrangement, and no prior arrangement of any kind, contractual or otherwise, with the railroads, airlines, or other companies." Packard, 418 F.3d at 258. The Third Circuit cited "through ticketing" as "one example of a common arrangement involving both intra and interstate portions of passenger transport" but concluded that it was "not the only means of establishing that passenger

14

transport operating intrastate is in practical continuity with a larger interstate journey." Id. (emphasis omitted). Highlighting the "lack of coordination with other transportation," such as through "a prepackaged tour," the Third Circuit concluded that the transportation service in Packard was "purely intrastate." Id.

### 4. Southern Shuttle

Guided by the interstate commerce principles in Walters, Morris and Yellow Cab, we conclude that the purely intrastate transport of passengers to and from an airport may, under certain circumstances, constitute interstate commerce and thus bring the transportation company within the jurisdiction of the Secretary of Transportation. Those circumstances are present here.

Many of Southern Shuttle's passengers to and from the airport have either just flown from, or are about to fly to, places outside the state of Florida. A large portion of Southern Shuttle's reservations are made via travel websites on the internet. Travelers buy package deals from these internet travel companies that include hotel accommodations and airfare in addition to transportation to and from the airport. The internet travel companies provide their package-deal customers with a voucher for free airport transportation, which the customers use to board Southern Shuttle's airport shuttles. Southern Shuttle then uses the collected vouchers to invoice the internet travel company for payment. In other words,

15

Southern Shuttle's local transport of these package-deal travelers has a "practical continuity of movement" with the overall interstate journey.

Furthermore, Southern Shuttle's arrangement with internet travel companies to provide airport shuttle service for their package-deal customers meets the "common arrangement" requirement discussed in Walters. Indeed, Southern Shuttle's voucher system resembles in many respects the voucher system the bus company used for cruise ship passengers in Walters. In sum, we conclude that Southern Shuttle has shown that it is subject to the Secretary of Transportation's jurisdiction under the MCA.[6]

## C.     Secretary's MCA Jurisdiction over Abel's Work-Related Activities

---

[6]We reject Abel's argument that the common arrangement must be a separate agreement with an interstate carrier to satisfy the interstate commerce requirement. We do not read Yellow Cab, or the agency decisions interpreting Yellow Cab, to impose such a requirement. Further, our precedent rejects such a narrow interpretation. See, e.g., Charter Limousine, Inc. v. Dade Cnty. Bd. of Cnty. Comm'rs, 678 F.2d 586, 587-89 (5th Cir. Unit B 1982) (concluding that prearranged ground transportation service to and from airport, which used interstate network to accept reservations and voucher payment system "satisfie[d] the special arrangement criteria stated by the Supreme Court in Yellow Cab"); Exec. Town & Country Servs. v. City of Atlanta, 789 F.2d 1523, 1525-26 (11th Cir. 1986) (relying on Charter Limousine to conclude that prearranged limousine service to and from airport "established the nexus between its business and interstate commerce as required by Yellow Cab and its progeny"). Neither Charter Limousine nor Executive Town involved a contract or common arrangement with an interstate carrier. Under our precedent, Southern Shuttle's prearranged shuttle transportation to and from the airport, often booked over the internet as part of a travel package including airfare and hotel accommodations and accomplished using a voucher system, satisfies the interstate commerce requirement even though the shuttle transportation itself takes place wholly within a single state.

16

We next address the second requirement: whether the Secretary's jurisdiction extends to Abel's work-related activities at Southern Shuttle. To satisfy this requirement, Southern Shuttle must show that Abel "engage[d] in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2(a). Abel does not dispute that, as an airport shuttle driver, he engaged in activities that directly affected the safety of operation of motor vehicles in the transportation of passengers on the public highways. Thus, the only issue presented is whether Abel's activities as an airport shuttle driver constituted "interstate commerce" within the meaning of the MCA. Here, the issue is easily resolved because Abel performed Southern Shuttle's core airport shuttle transport activity. Having already concluded that Southern Shuttle's airport shuttle service was transportation of passengers in interstate commerce that subjected it to the Secretary's jurisdiction, we conclude that Abel's activities in driving the airport shuttle also constitute interstate commerce.

### III. CONCLUSION

The undisputed evidence shows that both Southern Shuttle and Abel's activities as an airport shuttle driver fell under the Secretary of Transportation's

17

MCA jurisdiction. Accordingly, the district court properly granted summary

judgment to Southern Shuttle based on the motor carrier exemption to the FLSA.

**AFFIRMED.**