[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 28, 2008
THOMAS K. KAHN
CLERK

No. 08-13412
Non-Argument Calendar

_____

D. C. Docket No. 07-80584-CV-KLR

STEVEN ABEL,
on his own behalf and all
others similarly situated,

Plaintiff-Appellant,

versus

SOUTHERN SHUTTLE SERVICES, INC.,
a Florida Corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(November 28, 2008)**

Before CARNES, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Plaintiff Steven Abel appeals the district court's order granting summary judgment to his former employer, Southern Shuttle Services, Inc. ("Southern Shuttle"), on his claim for unpaid overtime brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219. The district court concluded as a matter of law that Southern Shuttle's airport shuttle service fell within the "taxicab exemption" to the FLSA's overtime provisions and Abel was not entitled to overtime compensation. After review, we reverse.

## I. BACKGROUND

The following facts are not in dispute.

## A.    Southern Shuttle's Airport Service

Southern Shuttle operates "Super Shuttle" vans that transport people to and from three airports: Miami International Airport ("MIA"), Palm Beach International Airport ("PBIA") and Fort Lauderdale-Hollywood International Airport ("FLHIA").[1] Super Shuttle (the "Shuttle") transports customers in large, nine- and ten-passenger vans. The Shuttle is "a shared-ride airport shuttle service," which means passengers share the ride to or from the airport with other passengers. The Shuttle's website touts its "shared ride" service as a way to offer

---

[1]Southern Shuttle has an agreement with Miami-Dade County to provide ground transportation services to MIA. Southern Shuttle has no other such contracts with airlines, hotels or companies.

"prices that are more economical than a taxi or limo . . . ."

Shuttle vans pick up passengers at any location in the area (such as their home, office or hotel) and transport them to one of the three area airports or take passengers from the airport to any location in the area. Shuttle drivers are not allowed to transport passengers from any location to any other location; they can transport passengers only to or from one of the three airports. The Shuttle uses "stands" at the three airports and is available to the general public.[2]

Southern Shuttle advertises its services under the heading "Airport Transportation" in telephone books. Taxicab companies, limousine services and town car services also advertise under this heading. Southern Shuttle does not advertise under the heading "Taxicabs."

Passengers contact the Shuttle directly. Passengers can either make reservations ahead of time by phone or schedule a trip at the airport. Passengers traveling to the airport schedule a fifteen-minute pickup window. Passengers traveling from the airport check in either at an airport kiosk or counter or at curbside with a Shuttle representative (not a driver) and wait to be assigned to a

---

[2]At MIA, the Shuttle has its own "stand," which is identical to stands used by taxicabs, but is separately marked with signs. The Shuttle has five spots at its MIA stand. While waiting to pick up passengers, taxicabs and the Shuttle vans wait in different designated areas. As for PBIA, the parties dispute whether the Shuttle has a separately marked spot or stand. We do not think this dispute affects the result in this case.

van waiting in a "holding lot." The Shuttle's "dispatch office" sends the vans to pick up passengers traveling to the airport and "routes" airport passengers with others traveling to the same geographical area and assigns them to vans. Shuttle drivers are not permitted to transport passengers who "hail" them on the street. Rather, they are allowed to transport only passengers who have pre-arranged transportation through the Shuttle's dispatch office or a kiosk or counter inside the airport.

The Shuttle charges passengers a flat rate based on zip codes organized into zones, a common practice in South Florida for both airport shuttles and some taxicabs. Shuttle vans do not have meters or charge metered fares. Shuttle drivers are paid commission and may accept tips. Some, but not all, Shuttle drivers have "hack" licenses, which taxicab drivers also possess.

From December 19, 2005 to June 24, 2007, Plaintiff Abel worked for Southern Shuttle as a driver of vans to and from the three airports. Abel was paid commission and tips, but no overtime compensation. For any period in which Abel's commission and tips was less than minimum wage, Southern Shuttle paid Abel the additional amount needed to reach minimum wage.

## B. District Court Proceedings

Abel filed this action on behalf of himself and other similarly situated

employees and former employees, alleging violation of the FLSA's overtime provisions. Following discovery, Southern Shuttle moved for summary judgment, arguing that Abel was exempt from receiving overtime compensation because Southern Shuttle was in the business of operating taxicabs. The district court agreed and granted the summary judgment motion.

Abel filed this appeal. Abel argues the district court erred in concluding as a matter of law that Southern Shuttle's airport shuttle service fell within the "taxicab exemption."[3]

## II. DISCUSSION

Generally, the FLSA requires an employer to pay overtime compensation at one and one-half times the employee's regular rate for all hours worked in excess of forty per week. 29 U.S.C. § 207(a)(1). The FLSA exempts from its overtime pay requirements "any driver employed by an employer engaged in the business of operating taxicabs . . . ." 29 U.S.C. § 213(b)(17). Neither the FLSA nor the Code of Federal Regulations defines the phrase "the business of operating taxicabs." When interpreting an FLSA exemption, we look to the plain language of the

---

[3]We review <u>de novo</u> a district court's order granting summary judgment, applying the same legal standards as the district court and viewing the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. <u>Allen v. Bd. of Public Educ. for Bibb County</u>, 495 F.3d 1306, 1309, 1313 (11th Cir. 2007). Summary judgment is appropriate when the evidence shows that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." <u>Id.</u> at 1313 (quotation marks omitted).

5

statute itself and give words of the statute "their ordinary, contemporary, common meaning." Anderson v. Cagle's Inc., 488 F.3d 945, 955 (11th Cir. 2007) (quotation marks omitted). Given the remedial nature of the FLSA, we construe exemptions narrowly against the employer. Alvarez Perez v. Sandford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1157 (11th Cir. 2008).

The Department of Labor's ("DOL") field operations handbook does contain a section on § 213(b)(17)'s taxicab exemption, which at least discusses the common features of a taxicab:

> "Business of operating taxicabs". The taxicab business consists normally of common carrier transportation in small motor vehicles of persons and such property as they may carry with them to any requested destination in the community. The business operates without fixed routes or contracts for recurrent transportation. It serves the miscellaneous and predominantly local transportation needs of the community. It may include such occasional and unscheduled trips to and from transportation terminals as the individual passengers may request, and may include stands at the transportation terminals as well as at other places where numerous demands for taxicab transportation may be expected.

Dep't of Labor, Wage and Hour Division, Field Operations Handbook § 24h01. We have said the field operations handbook is not entitled to Chevron deference, but may be persuasive. Klinedinst v. Swift Investments, Inc., 260 F.3d 1251, 1255 (11th Cir. 2001). The employer bears the burden to show by "clear and affirmative evidence" that an exemption applies. Birdwell v. City of Gadsden, 970

6

F.2d 802, 805 (11th Cir. 1992) (quotation marks omitted).

After reviewing the undisputed facts, we conclude that when the term "taxicabs" is construed narrowly and given its plain meaning, it does not include the airport shuttle vans Southern Shuttle operates. First, Congress could have used broader words that would have encompassed other forms of passenger motor vehicle transportation. Instead, Congress chose to limit this exemption to "taxicabs." Southern Shuttle does not call itself a taxicab operator or its vehicles taxicabs.

Second, the Shuttle's vans do not fit within the common sense understanding of a taxicab as reflected in the handbook. A taxicab is a small motor vehicle that carries a passenger to any requested destination. The passenger: (1) is not required to always have an airport destination or airport departure as part of the trip; (2) ordinarily is not obliged to share the ride with other passengers; and (3) is taken directly to his or her requested destination.[4]

In contrast, the Shuttle is operated as "shared ride" transportation with multiple unaffiliated passengers. Most passengers are not taken directly to their

---

[4]Southern Shuttle argues that because the field operations handbook states that a taxicab business may include trips to and from transportation terminals, its shuttle service is a taxicab business. However, Southern Shuttle ignores the limiting language that the trips to transportation terminals be "occasional and unscheduled." Super Shuttle trips to and from airports are neither occasional nor unscheduled. Every Super Shuttle trip is either to or from an airport and is scheduled. Thus, the field operations handbook does not help Southern Shuttle.

destination, but must wait through several stops as other passengers are picked up or dropped off. The Shuttle markets its shared ride feature as a way to offer passengers "prices that are more economical than a taxi or limo . . . ." Although taxicabs may sometimes permit ride-sharing (when passengers are willing), they generally are not operated as "shared ride" transportation.

Southern Shuttle uses large, nine- and ten-passenger vans for its Shuttles, not the typical smaller motor vehicles commonly used for taxicabs. Although we are not bound by each municipality's definition of a taxicab, both Broward County and Miami-Dade County draw the line for taxicabs at eight passengers. See Broward County, Fla. Code § 22½-1(k)(1) (2008); Miami-Dade County, Fla. Code § 31-81(qq) (2008).

A taxicab's fare usually is calculated by a taximeter based on distance and time, although sometimes it is based on a flat rate. Shuttle's vans do not have a meter. Notably, all three counties in which Southern Shuttle operates define a taxicab as a vehicle equipped with a meter.

Our determination necessarily turns on the specific facts presented. Nonetheless, we note that courts have concluded, based on many of the same considerations, that other kinds of passenger transportation services that share some attributes with taxicabs do not fall within the taxicab exemption. See, e.g.,

8

Wirtz v. Cincinnati, Newport & Covington Transp. Co., 375 F.2d 513, 514–15 (6th Cir. 1967) (concluding unmetered, four-passenger "Red Top" sedans operating under contract with air carriers to transport passengers to and from the airport not taxicabs); Airlines Transp. v. Tobin, 198 F.2d 249, 252 (4th Cir. 1952) (seven-passenger, unmetered limousines operating under contract with airline carriers to transport passengers to and from the airport).

Southern Shuttle argues that its airport shuttle vans are sufficiently similar to taxicabs to claim the exemption. For instance, its Shuttles provide "point to point" transportation and do not run on a fixed route or at set times. However, one of the two points for a Shuttle is always one of three area airports. Thus, one end of the route is always fixed.[5] Also, the Shuttle begins each trip with a route of scheduled stops that are predetermined by the dispatch office.

Southern Shuttle's other claimed similarities likewise do not fair well under close scrutiny. Although some taxicabs charge fares by zone, Miami-Dade County requires all taxicabs to have a taximeter, Miami-Dade County, Fla. Code § 31-

---

[5]Southern Shuttle's president averred that Southern Shuttle also operates "Passenger Motor Carrier" vans that transport members of the general public from point to point in Miami. Southern Shuttle provides no other information about this other shuttle service. Miami-Dade County's vehicles for hire ordinance contains provisions regulating "passenger motor carriers," which are separate from the provisions regulating taxicabs. Southern Shuttle's vague allegation about another shuttle service is insufficient to show by clear and affirmative evidence that it is entitled to the taxicab exemption.

86(a)(2008), and Southern Shuttle admits its Shuttles do not have taximeters. Although Southern Shuttle advertises in the yellow pages alongside taxicabs under the heading "Airport Transportation," so do town car services and limousine services. Southern Shuttle does not advertise its Shuttle service under the heading "Taxicabs."

Finally, Southern Shuttle argues that some drivers have what it calls a "hack license," by which it presumably means a chauffeur's registration. The two counties' ordinances that require chauffeur's registration–Broward County and Miami-Dade County–do not apply only to taxicab drivers.[6] See Broward County, Fla. Code § 22½-8(a)(2008) (applies to all drivers who operate a motor vehicle for compensation over Broward County streets); Miami-Dade County, Fla. Code § 31-83(2008) (applies to taxicab and limousine drivers). Further, these two counties impose additional permitting and other requirements on operators of taxicabs (as opposed to other passenger vehicles for hire). Although the employer bears the burden to show by clear and affirmative evidence that it is entitled to an FLSA exemption, Southern Shuttle produced no evidence that it complies with municipal taxicab regulations. For example, Southern Shuttle did not provide evidence that

---

[6]Similarly, Palm Beach County requires all drivers of vehicles for hire (which includes taxicabs, jitneys, shuttles and limousines) to have a county-issued identification badge. See Palm Beach County, Fla. Code §§ 19-213, 19-221(a) (2008).

it has either a for-hire taxicab license from Miami-Dade County or a certificate of public convenience from Broward County.  See Miami-Dade County, Fla. Code § 31-82(o) (requiring taxicab operators to obtain a for-hire taxicab license issued through a highly-regulated lottery system); Broward County, Fla. Code §§ 22½-3, 22½-3, 22½-4 (requiring taxicab operators to obtain a certificate of pubic convenience, also issued by lottery).

Southern Shuttle asks us to construe the word "taxicab" liberally when we are required to do the opposite.  The fact that its airport shuttle vans share some characteristics with taxicabs does not make them taxicabs.  In sum, Southern Shuttle has not shown that it is "engaged in the business of operating taxicabs."[7]  Therefore, the district court erred in granting summary judgment to Southern Shuttle on this basis.  Accordingly, we vacate the district court's order granting summary judgment and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**

---

[7]Southern Shuttle attached as exhibits to its motion for summary judgment DOL documents it claimed related to prior investigations of Southern Shuttle.  Southern Shuttle contended that, after each investigation, DOL concluded that its drivers fell under the taxicab exemption. Abel objected to the use of these documents both here and in the district court.  These documents are not authenticated or accompanied by a declaration or deposition supporting Southern Shuttle's factual assertions.  The documents predate Abel's employment by several years and contain numerous redactions.  Furthermore, it is not clear from the face of the documents whether the focus of these investigations was the applicability of the taxicab exemption or whether these were final agency determinations.  Given the obvious deficiencies in this evidence, we do not consider it.