[No. C052564. Third Dist. Mar. 22, 2007.]

JOHN T. SHEPARD, Plaintiff and Respondent, v.
EDWARD MACKAY ENTERPRISES, INC., et al., Defendants and
Appellants.

COUNSEL

Jacobson & McElroy, Julie D. McElroy, Andrew G. Minney; Becker & Runkle and David C. Becker for Defendants and Appellants.

Eugene P. Haydu for Plaintiff and Respondent.

OPINION

**BLEASE, Acting P. J.**—The sole issue in this appeal is whether the Federal Arbitration Act (FAA), which makes valid and enforceable any arbitration provision in a contract "evidencing a transaction involving commerce,"

preempts California law allowing a purchaser of real property to bring an action in court for construction and design defects, notwithstanding an agreement to arbitrate. Plaintiff John T. Shepard purchased a house within the Cottonwood subdivision from defendant, Edward Mackay Enterprises, Inc. (Mackay). Plaintiff filed a lawsuit after a leak from an underground plumbing pipe caused extensive damage to the home and its contents. The trial court denied defendants' motion to compel arbitration.

We shall conclude the FAA preempts contrary California law, and that defendants' evidence is sufficient to show the transaction at issue involved interstate commerce. We shall reverse the order of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff claims that a plumbing pipe installed by defendants Mackay and Cottonwood Development, and damaged by their subcontractor, Gary Lewis Construction, leaked and damaged plaintiff's home and possessions. Plaintiff alleged "the underground plumbing system was so negligently installed that a pipe was damaged which eventually broke causing water to seep and fill under the concrete foundation of the home." Plaintiff claimed water damaged interior finishes, carpeting, cabinets and drywall, and that he suffered personal injury from exposure to toxic mold. Plaintiff's lawsuit stated causes of action for negligence, breach of contract, breach of implied warranty, and strict liability.

Defendants moved to compel arbitration of the lawsuit based on an arbitration provision in the real estate purchase agreement. The arbitration provision stated: " 'ARBITRATION OF DISPUTES'. Buyer and Seller expressly agree to submit any and all disputes regarding this Agreement to arbitration in accordance with the procedures set forth below. Judgment upon the award rendered by arbitration may be entered in any court having jurisdiction hereof . . . [¶] 'NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. . . ."

Plaintiff opposed the motion to compel arbitration on the authority of Code of Civil Procedure section 1298.7. As described in *Villa Milano Homeowners Assn. v. Il Davorge* (2000) 84 Cal.App.4th 819, 830 [102 Cal.Rptr.2d 1], the effect of section 1298.7, "is to permit a purchaser to pursue a construction

and design defect action against the developer in court, even if the purchaser signed an agreement to convey real property containing an arbitration clause." (Fn. omitted.)

Defendants' reply brief asserted for the first time the issue of federal preemption. In conjunction with their reply brief, defendants filed the declarations of five materials suppliers. All of the suppliers stated that they supplied materials to the Cottonwood Park development, and that those supplies originated outside of California.

The trial court's tentative ruling indicated it was inclined to order the matter to arbitration. But since the issue of preemption was first raised in the reply brief, the court gave plaintiff an opportunity to file a brief in response. The record indicates plaintiff filed a supplemental brief, but it is not included as part of the record.

The trial court stated that all of the declarations filed in support of the motion to compel arbitration "only state the factual conclusions of the declarant; none state evidentiary facts on personal knowledge from which the court could deduce the ultimate fact, which is that claims in this case implicate interstate commerce." The trial court concluded that defendants' evidentiary showing failed to demonstrate the transaction involved interstate commerce. The trial court's order denying the motion to compel arbitration is directly appealable. (Code Civ. Proc., § 1294, subd. (b).)[1]

## DISCUSSION

█ The parties agreed to arbitrate any disputes "regarding" the real estate purchase agreement and any dispute "arising out of" a matter regarding the real estate purchase agreement. Although plaintiff has pleaded tort as well as contract claims, such a broadly worded arbitration agreement embraces both tort and contractual claims as long as the claims are rooted in the relationship created by the contract. (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 686 [99 Cal.Rptr.2d 809].) Nevertheless, section 1298.7 provides that an arbitration agreement does not preclude an action for damages from a defendant who constructed an improvement to real property. Section 1298.7 thus permits a purchaser to pursue a construction defect case even if the agreement conveying the real property contained an arbitration clause. (*Basura v. U.S. Home Corp.* (2002) 98 Cal.App.4th 1205, 1209 [120 Cal.Rptr.2d 328] (*Basura*).)

---

[1] References to an undesignated section are to the Code of Civil Procedure unless otherwise indicated.

■ Defendants claim the FAA preempts section 1298.7, and that the arbitration clause is therefore valid and enforceable. Section 2 of the FAA (9 U.S.C. § 2) provides: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The FAA preempts conflicting state anti-arbitration law. (*Southland Corp. v. Keating* (1984) 465 U.S. 1, 15–16 [79 L.Ed.2d 1, 15–16, 104 S.Ct. 852].)

■ The United States Supreme Court has determined that the phrase " 'involving commerce' " in the FAA is the functional equivalent of the term " 'affecting commerce,' " which is a term of art that ordinarily signals the broadest permissible exercise of Congress's commerce clause power. (*Citizens Bank v. Alafabco, Inc.* (2003) 539 U.S. 52, 55, 56 [156 L.Ed.2d 46, 51, 123 S.Ct. 2037] (*Alafabco*).) In *Allied-Bruce Terminix Cos. v. Dobson* (1995) 513 U.S. 265, 268–269 [130 L.Ed.2d 753, 761, 115 S.Ct. 834] (*Allied-Bruce*), the court held that the FAA preempted an Alabama law making written, predispute arbitration agreements invalid. The contract containing the arbitration clause was a lifetime termite protection plan between an Alabama homeowner and the local office of Allied-Bruce Terminix Companies. (*Allied-Bruce*, at p. 268. [130 L.Ed.2d at pp. 760–761].) The court held that the words " 'involving commerce' " in the FAA encompass more than activities within the flow of interstate commerce, and should be read as any contract " 'affecting commerce.' " (*Allied-Bruce*, at pp. 273–274 [130 L.Ed.2d at p. 764].)

■ The court put to rest any notion that the term " 'evidencing a transaction involving commerce' " meant that the parties must have contemplated substantial interstate activity at the time they entered into the agreement. (*Allied-Bruce, supra*, 513 U.S. at p. 277 [130 L.Ed.2d at p. 766], italics omitted.) The court adopted instead a "commerce in fact" interpretation, meaning that the transaction must merely turn out, in fact, to have involved interstate commerce. (*Id.* at pp. 277–278 [130 L .Ed. 2d at p. 767].) The court reasoned that states could still protect consumers against unfair pressure to agree to arbitrate by regulating contracts, including arbitration agreements, upon such grounds that apply to any contract. However, states may not decide that a contract is fair enough to enforce on its basic terms, but not fair enough to enforce its arbitration clause. (*Id.* at p. 281 [130 L.Ed.2d at p. 769].)

The court concluded that the termite protection plan at issue involved interstate commerce because of the multistate nature of Terminix, the fact that the termite-treating and house-repairing material used by Allied-Bruce came from outside Alabama, and the fact that the parties did not contest that the transaction involved interstate commerce. (*Allied-Bruce, supra,* 513 U.S. at p. 282 [130 L.Ed.2d at p. 769].)

■ Shortly after handing down its opinion in *Allied-Bruce,* the United States Supreme Court issued another ruling regarding the reach of Congress's power to regulate interstate commerce. *United States v. Lopez* (1995) 514 U.S. 549 [131 L.Ed.2d 626, 115 S.Ct. 1624] (*Lopez*), involved the Gun-Free School Zones Act of 1990 (18 U.S.C. § 921 et seq.; the Act), which made it a federal offense to knowingly possess a firearm at a place the individual knows, or has reasonable cause to believe, is a school zone. (514 U.S. at p. 551 [131 L.Ed.2d at p. 632].) The court set forth three categories of activity that Congress may regulate under the commerce power: (1) the channels of interstate commerce, (2) the instrumentalities of interstate commerce and persons or things in interstate commerce, and (3) those activities having a substantial relation to interstate commerce. (*Id.* at pp. 558–559 [131 L.Ed.2d at p. 637].) The court concluded that the Act could be sustained only under the third category, as one that substantially affected interstate commerce. (514 U.S. at p. 559 [131 L.Ed.2d at p. 638].) The court determined that the Act was a criminal statute that had nothing to do with commerce or any economic enterprise, thus it did not substantially affect interstate commerce. (514 U.S. at p. 561 [131 L.ed. 2d at pp. 638–639].)

The Supreme Court revisited the issue in the context of the FAA in *Alafabco, supra,* 539 U.S. 52 [156 L.Ed.2d 46]. There, the contract was a debt restructuring agreement between an Alabama lending institution and an Alabama fabrication and construction company. (*Id.* at p. 53 [156 L.Ed.2d at p. 49].) The Alabama court had not found the requisite substantial effect on interstate commerce, as required by *Lopez,* because there had been no showing " 'that any portion of the restructured debt was actually attributable to interstate transactions; that the funds comprising that debt originated out-of-state; or that the restructured debt was inseparable from any out-of-state projects.' " (*Id.* at p. 55 [156 L.Ed.2d at p. 50].)

■ The Supreme Court held that the Alabama court had been "misguided" in looking for evidence that the transaction was actually in interstate commerce. (*Alafabco, supra,* 539 U.S. at p. 56 [156 L.Ed.2d at p. 51].) It held that the commerce clause power could be exercised to preempt contrary state law " 'in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.' [Citations.]

Only that general practice need bear on interstate commerce in a substantial way." (*Id.* at pp. 56–57 [156 L.Ed.2d at pp. 51–52].) The court concluded that the debt-restructuring agreements involved commerce because Alafabco engaged in business outside Alabama using loans from the bank that were restructured in the agreement, because the restructured debt was secured by Alafabco's assets, which included goods assembled from out-of-state parts and raw materials, and because of the "broad impact of commercial lending on the national economy [and] Congress's power to regulate that activity pursuant to the Commerce Clause." (*Id.* at pp. 57–58 [156 L.Ed.2d at p. 52].)

The court recognized that although Congress's power to regulate commerce is broad, it does have limits. (*Id.* at p. 58 [156 L.Ed.2d at p. 53].) The court did not, however, describe the limits of Congress's commerce power, although the court had previously stated that a relatively trivial impact on interstate commerce cannot be used as an excuse for broad regulation of state or private activities. (*Lopez, supra,* 514 U.S. at p. 559 [131 L.Ed.2d at p. 637].)

Three published California cases have construed the United States Supreme Court's holding in *Allied-Bruce* in the context of a real estate purchase. In the first, *Basura,* more than 60 homeowners brought an action for design and construction defects. (*Basura, supra,* 98 Cal.App.4th at p. 1208.) The court, following *Allied-Bruce,* held the contracts involved interstate commerce. (*Id.* at p. 1214.) The evidence indicating interstate commerce was involved included declarations by U.S. Home executives stating: (1) the construction of the development project involved the receipt and use of building materials and equipment which were manufactured and/or produced outside California; (2) U.S. Home contracted with out-of-state design professionals, trade contractors, subcontractors and others; (3) U.S. Home communicated by interstate mail and telephone with out-of-state manufacturers, design professionals, trade contractors, subcontractors and their employees; and (4) U.S. Home engaged in marketing and advertising activities throughout the country using interstate media. (*Ibid.*)

The second case, *Hedges v. Carrigan* (2004) 117 Cal.App.4th 578 [11 Cal.Rptr.3d 787] (*Hedges*), was filed by home buyers against their real estate broker, the sellers, and the sellers' real estate broker over several defects in the residence. (*Id.* at p. 580.) The written purchase agreement contained an arbitration clause. (*Ibid.*) The court held in dicta that the contract was one which evidenced a transaction involving commerce because the financing of the transaction was through the Federal Housing Administration, and because the various copyrighted forms used by the parties could only be utilized by members of the National Association of Realtors. (*Id.* at pp. 586–587.)

The third California case arose when a homeowner and a contractor entered into a written agreement for the renovation and expansion of the homeowner's single-family residence. (*Woolls v. Superior Court* (2005) 127 Cal.App.4th 197 [25 Cal.Rptr.3d 426].) The court granted the homeowner's petition to vacate an arbitration award. (*Id.* at p. 200.) The court distinguished *Basura*, because it had involved the construction of a large-scale housing development. (*Id.* at p. 213.) The court also concluded that the contractor had not made any evidentiary showing that the transaction involved interstate commerce. (*Ibid.*)

Applying the *Lopez* analysis, we conclude that the activity sought to be regulated here does not involve the channels of interstate commerce, the instrumentalities of interstate commerce, or persons or things in interstate commerce.[2] We must determine whether the transaction involved an activity having a substantial relation to interstate commerce.

In this case, defendant's evidence of interstate commerce consisted of: (1) a declaration from an employee of the carpet and vinyl flooring supplier for the development stating that the carpet and vinyl flooring it supplied to the development were manufactured outside California and delivered across state lines; (2) a declaration from the supplier of doors and hardware for Shepard's house stating that "some of the hardware and doors . . . used in this project were made from Kuickset [*sic*] Lock Manufacturers which is located in Mexico[;]"[3] (3) a declaration from the truss supplier stating the trusses used in Shepard's house were made from lumber from Washington; (4) a declaration from the door and window supplier stating the materials provided for the project were manufactured outside California; and (5) a letter from the kitchen appliance supplier stating the products used for the project were produced in facilities outside the state.

Unlike *Allied-Bruce*, *Alafabco*, and *Basura*, no evidence was presented here that either of the parties was from out of state, engaged in business out of state, or used interstate media to engage in advertising. Nor was any evidence presented that out-of state-professional services were used in conjunction with the transaction. (See *Basura, supra,* 98 Cal.App.4th at p. 1214.) In fact, although situated in a larger housing development, the plan for Shepard's house was to be a custom plan. Unlike *Hedges*, there was no evidence the transaction involved financing subject to federal control or that the parties used forms from a national association.

---

[2] Examples of "instrumentalities of interstate commerce" cited in *Lopez* are railroads and vehicles used in interstate commerce. (*Lopez, supra,* 514 U.S. at p. 558 [131 L.Ed.2d at p. 637].)

[3] The declaration of the door and hardware supplier appears to be incomplete.

■ However, like *Basura*, defendants here produced evidence the construction of plaintiff's house involved the receipt and use of building materials that were manufactured and/or produced outside California. Moreover, the number of building materials shown by defendants to have come from interstate commerce indicates this case is not one involving a merely "trivial" impact on interstate commerce, which would be outside the limits of Congress's power. (See *Lopez, supra*, 514 U.S. at p. 559 [131 L.Ed.2d at p. 637].)

Plaintiff argues defendants' evidence is inadequate because none of the materials from out of state were at issue in this case, with the exception of the carpeting. We are aware of no cases indicating the FAA preempts contrary state law only if the particular dispute is over interstate goods, and plaintiff admitted at oral argument that he was aware of no such authority. On the contrary, the language of section 2 of the FAA indicates the pertinent question is whether the contract evidences a transaction involving interstate commerce, not whether the dispute arises from the particular part of the transaction involving interstate commerce. Moreover, plaintiff's interpretation is directly contrary to the holding in *Alafabco*, in which the Supreme Court overturned an Alabama decision finding no effect on interstate commerce in a debt restructuring agreement where none of the funds comprising the debt originated out of state. (*Alafabco, supra*, 539 U.S. at pp. 52, 55 [156 L.Ed.2d at p. 51].)

Finally, we disagree with the trial court's finding that the declarations in this case do not "state evidentiary facts on personal knowledge from which the court could deduce the ultimate fact, which is that claims in this case implicate interstate commerce." Each of the declarations stated that certain materials provided by the declarant were manufactured outside California. These are evidentiary facts based upon the declarants' personal knowledge. These facts are sufficient to support a finding on the ultimate legal issue, i.e., whether the transaction involved interstate commerce.

■ The party claiming a state law is preempted by federal legislation has the burden of demonstrating preemption. (*Bronco Wine Co. v. Jolly* (2004) 33 Cal.4th 943, 956–957 [17 Cal.Rptr.3d 180, 95 P.3d 422].) We conclude defendants met their burden of demonstrating that this transaction substantially affected interstate commerce, therefore the FAA preempts contrary state law in this case.

## DISPOSITION

The judgment (order) is reversed. Appellants (defendants) shall recover their costs on appeal. (Cal. Rules of Court, rule 8.276.)

Hull, J., and Robie, J., concurred.