Filed 5/15/15; pub. order 6/9/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| VALO KHALATIAN,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>PRIME TIME SHUTTLE, INC. et al.,<br><br>Defendants and Appellants. | B255945<br><br>(Los Angeles County<br>Super. Ct. No. BC485917) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Suzanne G. Bruguera, Judge.  Reversed.

Epstein Becker & Green, David Jacobs, William O. Stein and Rhea G. Mariano for Defendants and Appellants.

Law Office of Tony Forberg and Tony Forberg for Plaintiff and Respondent.

\* \* \* \* \* \*

Defendants Prime Time Shuttle, Inc. (Prime Time), Rideshare Airport Management, LLC, formerly known as Rideshare Port Management, LLC, and Rattan Joea appeal a trial court order denying their motion to compel arbitration of claims based on the alleged misclassification of plaintiff Valo Khalatian as an independent contractor rather than an employee.  We find the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) applies to the parties' arbitration agreement, and all of plaintiff's claims are arbitrable.  We also conclude defendants did not waive their right to arbitration even though they waited 14 months after the complaint was filed to move to compel arbitration.  Plaintiff cannot demonstrate prejudice from the delay, which is determinative.  (*Saint Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1203.)  We reverse the trial court's order denying the petition to compel arbitration and remand the case to the trial court with instructions to enter an order compelling arbitration of all of plaintiff's claims.

## BACKGROUND

Defendants own and operate an airport charter transport business.  From about June 2009 until June 2012, plaintiff worked for defendants as an airport shuttle van driver.  Plaintiff picked up and dropped off people primarily at LAX.

Plaintiff entered into an Owner-Operator Sub-Carrier Agreement (Agreement) with defendant Rideshare Port Management, LLC, doing business as Prime Time Shuttle, LLC.[1]  The Agreement provides for binding arbitration of "any controversy or claim between the parties arising out of or relating to this Agreement or any alleged breach hereof, including any issues . . . that this Agreement or any part hereof is invalid, illegal, or otherwise voidable or void . . . ."

The Agreement also provides:  "By this Agreement, Sub-Carrier and Prime Carrier acknowledge and agree that there does not exist between them the relationship of employer/employee . . . either express or implied.  Sub-Carrier will not be treated as an

---

[1]     The Agreement identifies the Prime Time entity as a limited liability company at the time the Agreement was executed.

employee of Prime Carrier for any purpose, statutory or otherwise . . . ." Thus, according to the terms of the Agreement, plaintiff was an independent contractor and not an employee.

The operative complaint alleges 11 causes of action for various wage and hour violations of the Labor Code, as well as causes of action for conversion, breach of contract, wrongful termination, intentional interference with prospective economic advantage, unfair competition, and violation of title 29 United States Code section 206, which governs the federal minimum wage for employees engaged in commerce. In the general allegations of the complaint, plaintiff alleged he gave notice to the Labor and Workforce Development Agency (LWDA) of defendants' wage and hour violations and is entitled to bring claims under Labor Code section 2699 (the Private Attorney General Act (PAGA)). However, nowhere in the operative complaint does plaintiff say anything about seeking recovery of a "civil penalty to be assessed and collected by the [LWDA]." (See § 2699, subd. (a).) The prayer for relief makes no reference to any relief plaintiff seeks on behalf of the public or the LWDA. At oral argument before us, plaintiff's counsel confirmed that plaintiff has not asserted a PAGA cause of action. Counsel also confirmed plaintiff does not seek to bring a class action but alleges only individual claims for relief.

In the trial court, the question whether California law or the FAA applies to the arbitration agreement was not raised in defendants' motion to compel arbitration, nor in plaintiff's opposition, nor in defendants' reply. Plaintiff's chief argument in opposition to the motion to compel arbitration, both in the trial court and in the Court of Appeal, has been that defendants waived the right to compel arbitration. Plaintiff has never contended the arbitration agreement was unconscionable.

At the initial hearing on the motion to compel arbitration, held September 20, 2013, the court granted plaintiff an opportunity to submit supplemental briefing by October 4, 2013, and gave defendants a chance to file a response by October 18, 2013. The court continued the hearing on the motion to October 30, 2013. At the hearing held October 30, 2013, the court granted defendants an opportunity to file a second

supplemental brief. Defendants filed the second supplemental brief, along with supplemental declarations and a request for judicial notice, on November 18, 2013, asserting FAA preemption for the first time. The record does not include any further briefing by plaintiff. No reporter's transcripts are included in the record. The court took the matter under submission and issued its minute order February 20, 2014, denying the motion to compel arbitration.

The trial court order denying arbitration (prepared and proposed to the court by plaintiff) made no reference to the FAA. First, the court concluded defendants waived the right to arbitrate by litigating. Second, the court concluded that plaintiff did not agree to arbitrate his statutory labor claims. The court explained that because the complaint is based principally on the violation of Labor Code statutes, defendants could not compel arbitration. The court relied on California law and did not address defendants' contention that the FAA governed the interpretation of the arbitration agreement.

## DISCUSSION

### 1. The Claims Are Arbitrable.

#### a. Federal preemption

California Labor Code section 229 provides that a cause of action that seeks to collect due and unpaid wages pursuant to Labor Code sections 200 through 244 can be maintained in court, despite an agreement to arbitrate. (*Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 684 (*Lane*).) Thus, if California law governs the interpretation of the arbitration agreement, then plaintiff's two causes of action for due and unpaid wages under Labor Code sections 200 through 244 (the fifth and sixth causes of action) can be maintained in court. But if the FAA applies, all of plaintiff's statutory claims may be arbitrated. (See *Perry v. Thomas* (1987) 482 U.S. 483, 492 [where FAA applies, it preempts Labor Code, § 229].) PAGA claims are not subject to private arbitration agreements (*Iskanian v. CLS Transportation Los Angeles LLC* (2014) 59 Cal.4th 348, 382-385 (*Iskanian*)), but plaintiff has not alleged a PAGA claim.

"A party seeking to enforce an arbitration agreement has the burden of showing FAA preemption." (*Lane, supra,* 224 Cal.App.4th at p. 687.) A petitioner seeking

4

an order to compel arbitration must show that the subject matter of the agreement involves interstate commerce.  (*Id.* at pp. 687-688; *Giuliano v. Inland Empire Personnel, Inc.* (2007) 149 Cal.App.4th 1276, 1286 [same].)  When an arbitration agreement is subject to the FAA, "questions concerning the construction and scope of the arbitration clause are determined by federal law."  (*Baker v. Aubry* (1989) 216 Cal.App.3d 1259, 1263.)

        **b.     The dispute involves interstate commerce.**

        The FAA applies when the contract "evidences a transaction involving interstate commerce . . . ."  (*Shepard v. Edward Mackay Enterprises, Inc.* (2007) 148 Cal.App.4th 1092, 1101 (*Shepard*).)

        "Section 2 of the FAA provides in relevant part:  'A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'  (9 U.S.C. § 2.)"  (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 234-235.)

        Defendants cite *Abel v. Southern Shuttle Services, Inc.* (11th Cir. 2011) 631 F.3d 1210 (*Abel*) in support of their argument that this dispute involves interstate commerce. In *Abel*, the court considered whether a former "SuperShuttle" employee was entitled to overtime pay under the Federal Labor Standards Act (FLSA).  In the context of analyzing whether the plaintiff fell within the Motor Carrier Act exemption to the overtime pay requirement,[2] the court concluded "that the purely intrastate transport of passengers to and from an airport may, under certain circumstances, constitute interstate commerce . . . ."  (*Abel,* at p. 1216.)  In *Abel*, the circumstances justified finding the employee and his employer were engaged in interstate commerce because the passengers

---

[2]     One criteria for the exemption is that the employee's work must directly affect the safety of operation of motor vehicles in the transportation of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.  (*Abel, supra*, 631 F.3d at p. 1213.)

using the employer's service often travelled from other states. In addition, passengers purchased package deals on the internet which included hotel accommodations, airfare, and vouchers for free airport transportation which the customers used to board the employer's airport shuttles. "In other words, [the] local transport of these package-deal travelers has a 'practical continuity of movement' with the overall interstate journey." (*Id.* at pp. 1216-1217.)

Defendants submitted evidence and a request for judicial notice in support of their second supplemental brief demonstrating their operations are substantially the same as the operations of the employer in *Abel*. Defendants also provide shuttle service to and from major airports and harbors throughout California, contract with Expedia and other web vendors to advertise on their websites, and permit passengers to use the internet to make a shuttle reservation and pay for their reservation online. Plaintiff was a shuttle driver who picked up and dropped off people primarily at LAX. Plaintiff acknowledges that defendants' evidence "clearly" shows defendants were involved in interstate commerce but contends he was not engaged in interstate commerce because he only drove shuttles within California. Presented with virtually the same facts as those before the court in *Abel*, we follow the reasoning of that decision in finding the Agreement between the parties involves interstate commerce. California law is consistent with this conclusion. (*Shepard, supra,* 148 Cal.App.4th at p. 1101.)[3]

### c. The dispute falls within the arbitration provisions.

Arbitration is strongly favored, and any doubts concerning the scope of arbitrable issues will be resolved in favor of arbitration. (*Steelworkers v. Warrior & Gulf Co.*

---

[3] The FAA (9 U.S.C. § 1) exempts "contracts of employment of transportation workers" (*Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 119), but some federal district court authorities have held it does not exempt contracts establishing an independent contractor (rather than employment) relationship. (See, e.g., *Owner-Operator Independent Drivers v. Swift* (D.Ariz. 2003) 288 F.Supp.2d 1033, 1035-1036 & fn. 3 [also noting contrary authority].) Plaintiff has never asserted he is a transportation worker within the meaning of this exemption. That issue was not briefed by the parties. Therefore, we do not consider it further.

6

(1960) 363 U.S. 574, 582-583; *United Transportation Union v. Southern Cal. Rapid Transit Dist.* (1992) 7 Cal.App.4th 804, 808.) When deciding whether the parties agreed to arbitrate a dispute, courts generally apply ordinary state-law principles of contract interpretation. (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944.) Notwithstanding the policy favoring arbitration, because " 'arbitration is a matter of contract[,] a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' [Citation.]" (*AT&T Technologies v. Communications Workers* (1986) 475 U.S. 643, 648; see also *Lawrence v. Walzer & Gabrielson* (1989) 207 Cal.App.3d 1501, 1505.) The party opposing arbitration has the burden to show that the agreement does not apply to the dispute. (*Buckhorn v. St. Jude Heritage Medical Group* (2004) 121 Cal.App.4th 1401, 1406.)

The Agreement between the parties here provides "there does not exist between them the relationship of employer/employee . . . either express or implied. Sub-Carrier will not be treated as an employee of Prime Carrier for any purpose, statutory or otherwise . . . ." The Agreement also provides that "any controversy or claim between the parties arising out of or relating to this Agreement or any alleged breach thereof, including any issues . . . that this Agreement or any part hereof is invalid, illegal, or otherwise voidable or void, shall be submitted to binding arbitration."

The complaint alleges that plaintiff was misclassified as an independent contractor, and was entitled to protections conferred upon employees by the Labor Code, notwithstanding the representations made in the Agreement. The resolution of plaintiff's claims requires a determination whether the Agreement sets the terms of plaintiff's compensation or whether instead the Agreement is "invalid, illegal, or otherwise voidable or void" for inaccurately characterizing the parties' relationship in order to deprive plaintiff of his rightful compensation under the Labor Code. In short, this dispute concerns a controversy or claim between the parties arising out of or relating to their Agreement, including plaintiff's claim that the compensation provisions of the Agreement are invalid, illegal, voidable or void.

7

The language "arising out of or relating to" as used in the parties' arbitration provision is generally considered a broad provision.  (*Larkin v. Williams, Woolley, Cogswell, Nakazawa & Russell* (1999) 76 Cal.App.4th 227, 230 [holding complaint for dissolution of partnership arises out of and relates to partnership agreement]; *Baudoin v. Mid-Louisiana Anesthesia Consultants, Inc*. (5th Cir. 2009) 306 Fed.Appx. 188, 192 ["broad arbitration clauses are those where the language of the clause requires arbitration of any dispute that arises out of or relates to" the agreement, or disputes that are " ' "in connection with" the agreement' "].)  In *Southland Corp. v. Keating* (1984) 465 U.S. 1, the United States Supreme Court found a contract covering " 'any controversy or claim arising out of or relating to this Agreement or the breach hereof' " to encompass claims under the California Franchise Investment Law.  (*Id.* at p. 15, fn. 7.)

Broad arbitration clauses such as this one are consistently interpreted as applying to extra-contractual disputes between the contracting parties.  (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 681, fn. 2, 686 [where parties agreed to arbitrate " '[a]ny problem or dispute arising under this Agreement and/or concerning the terms of this Agreement,' " the arbitration agreement was broad enough to encompass tort claims]; *Berman v. Dean Witter & Co., Inc.* (1975) 44 Cal.App.3d 999, 1003 ["The phrase 'any controversy . . . arising out of or relating to this contract . . .' is certainly broad enough to embrace tort as well as contractual liabilities so long as they have their roots in the relationship between the parties which was created by the contract"].)

Indeed, the high court has established that statutory claims are arbitrable when the parties' contract involves interstate commerce and is therefore governed by the FAA.  (*Mitsubishi Motors v. Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 626 ["There is no reason to depart from [the policy favoring arbitration] where a party bound by an arbitration agreement raises claims founded on statutory rights"].)  Given the preference for arbitration, and the broad language of the Agreement, plaintiff's claims that the Labor

8

Code governs his compensation, and not the compensation terms of his Agreement with defendants, fall within the ambit of the arbitration clause.

## 2. Waiver

Plaintiff filed his first amended complaint on October 1, 2012. Defendants demurred to the complaint. The demurrer was taken off calendar when the parties agreed plaintiff could file a second amended complaint. A second amended complaint was filed March 4, 2013. Defendants answered the second amended complaint on April 16, 2013.

Discovery was limited. Plaintiff demanded documents and sent form interrogatories to one defendant, Prime Time. Prime Time responded to the demand for production of documents. Prime Time propounded one set of requests for production of documents and one set of special interrogatories on plaintiff. Plaintiff produced 177 pages of documents. Defendants contend that for about one-third of the interrogatories, plaintiff responded "with only this statement: 'Discovery is ongoing, and has not yet been completed, and this responding party will amend his responses when discovery is completed.' " According to defendants, "[i]n response to the remaining interrogatories, Plaintiff merely restated the allegations and conclusions" in the operative pleading. Neither party included the responses in the record, and plaintiff does not dispute defendants' characterization of his responses.

Trial was set for October 20, 2014.

In finding waiver, the court found that the 14-month delay between the filing of the complaint and the filing of the motion to compel was unreasonable, and that defendants actively participated in discovery and case management conferences and meetings with opposing counsel. The court also found that "[o]nly after exhausting all other means (Defendants' demurrer was overruled, Defendant's Motion to Strike was denied, Defendants were required to file an answer to Plaintiff's Second Amended Complaint, and Defendants filed said answer) and with an impending trial looming, do Defendants now seek a court ordered arbitration."

Our Supreme Court's recent discussion of waiver of the contractual right to arbitrate is dispositive. " 'California courts have found a waiver of the right to demand

9

arbitration in a variety of contexts, ranging from situations in which the party seeking to compel arbitration has previously taken steps inconsistent with an intent to invoke arbitration [citations] to instances in which the petitioning party has unreasonably delayed in undertaking the procedure. [Citations.] The decisions likewise hold that the "bad faith" or "willful misconduct" of a party may constitute a waiver and thus justify a refusal to compel arbitration. [Citation.]' [Citation.] The fact that the party petitioning for arbitration has participated in litigation, short of a determination on the merits, does not by itself constitute a waiver." (*Iskanian, supra,* 59 Cal.4th at pp. 374-375.)

The Supreme Court reaffirmed the factors relevant to the waiver inquiry: " ' " '(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.' " ' " (*Iskanian, supra,* 59 Cal.4th at p. 375.)

The *Iskanian* court also explained the standard of proof and the standard of review. "In light of the policy in favor of arbitration, 'waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof.' [Citation.] 'Generally, the determination of waiver is a question of fact, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court. [Citations.] "When, however, the facts are undisputed and only one inference may reasonably be drawn, the issue is one of law and the reviewing court is not bound by the trial court's ruling." ' " (*Iskanian, supra,* 59 Cal.4th at p. 375.) Here the parties dispute the underlying facts, and we review the trial court's determination for substantial evidence.

If the facts were as the trial court found, the conclusion that defendants had abandoned the right to arbitrate would be correct. But the trial court's findings are not supported by the record. While the court found defendants actively participated in discovery, the evidence showed that only one defendant propounded discovery. That defendant propounded only one set of interrogatories, to which plaintiff responded with nothing more than references to the allegations of the complaint, and one request for production, to which plaintiff responded with 177 pages of documents. No depositions were taken, and no discovery motions were filed or heard. There is no evidence plaintiff provided any strategic information or any information he would not be required to provide in arbitration.

The trial court's finding that defendants failed to seek arbitration until they "exhausted all other means" also is not supported by the record. The court specifically stated defendants' demurrer was overruled and their motion to strike was denied. But that is not what happened. The record shows that the demurrer and motion to strike were taken off calendar when defendants agreed plaintiff could file a second amended complaint. Answering a complaint does not result in waiver. (*Gloster v. Sonic Automotive, Inc.* (2014) 226 Cal.App.4th 438, 449 (*Gloster*).) Although filing a demurrer may lead to a determination on the merits, none was made here.

The trial court's finding that the trial was looming also is unsupported. The trial date was more than a year away when defendants filed their motion to compel. Plaintiff cites no evidence to support the court's finding that his counsel conferred with opposing counsel, but assuming that to be true, such conduct is insufficient to demonstrate waiver. Indeed, other than citing to the trial court's order, plaintiff cites only to the case summary sheet which is not evidence in support of the court's findings.

Finally, even though there was a 14-month period from the filing of the original complaint to the filing of the motion to compel, absent prejudice, the delay is insufficient to support the waiver. (*Iskanian, supra*, 59 Cal.4th at pp. 376-377.) In *Iskanian*, our Supreme Court rejected the argument that a plaintiff's efforts over three years, including considerable effort and expense, resulted in waiver. (*Ibid.*) Participating in litigation

11

itself does not result in waiver.  (*Id*. at p. 377.)  Causing the other party to incur expenses as part of litigation also does not result in waiver.  (*Gloster, supra,* 226 Cal.App.4th at p. 450.)  Here, there was no evidence that defendants stretched out the litigation process, gained information about plaintiff's case they could not have learned in an arbitration, or waited until the eve of trial to move to compel arbitration.  (See *Iskanian*, at p. 377.)  Plaintiff identifies no information revealed during discovery that would not have been revealed in an arbitration.  The motion to compel arbitration was made over a year before trial, not weeks before trial, as in *Burton v. Cruise* (2010) 190 Cal.App.4th 939, 949.  Because plaintiff demonstrated no prejudice from defendants' delay in moving to compel arbitration, the court erred in finding waiver.

## DISPOSITION

The trial court's order denying defendants' motion to compel arbitration is reversed.  The case is remanded to the trial court with instructions to enter a new order granting the motion to compel arbitration.  Appellants are awarded costs on appeal.


GRIMES, J.

I CONCUR:


BIGELOW, P. J.


12

Flier, J., Concurring and Dissenting

Because I conclude the arbitration provision does not encompass all of respondent Valo Khalatian's causes of action, I write separately.[1]  I would affirm in part and reverse in part the trial court's order denying appellants' (Prime Time Shuttle, Inc., Rideshare Airport Management, LLC, formerly known as Rideshare Port Management, LLC, and Rattan Joea) petition to compel arbitration.

As the majority explains, Khalatian agreed to arbitrate "any controversy or claim between the parties arising out of or relating to this Agreement or any alleged breach thereof, including any issues . . . that this Agreement or any part hereof is invalid, illegal, or otherwise voidable or void."  Further, as the majority acknowledges, in evaluating a motion to compel arbitration, the threshold issue under both the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and under California law is whether the parties have an agreement to arbitrate.  (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236; *Elijahjuan v. Superior Court* (2012) 210 Cal.App.4th 15, 20 (*Elijahjuan*) [threshold issue is whether the parties have an agreement to arbitrate]; *AT&T Technologies v. Communications Workers* (1986) 475 U.S. 643, 648 [" '[A]rbitration is a

---

[1]  Most claims in the operative complaint are based on the alleged violation of Labor Code statutes governing payment and benefits to employees.  The conversion cause of action was based on an alleged violation of Labor Code section 351, which governs gratuities.  The breach of contract cause of action is based on an alleged agreement between appellants and the City of Los Angeles, requiring appellants to pay their employees a living wage.  Khalatian's wrongful termination cause of action was based on alleged violation of public policy based on various Labor Code statutes.  In the cause of action for interference with prospective economic advantage, Khalatian alleged that appellants terminated his agreement "in contravention of its terms."  Similarly the unfair competition claim was based on an alleged improper termination in contravention of the terms of the agreement as well as identifying the same allegations raised in his other causes of action.

1

matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' "].)  Although the law favors arbitration, there is no policy compelling arbitration unless the parties agreed to arbitrate a dispute.  (*Bono v. David* (2007) 147 Cal.App.4th 1055, 1063.)

Here with respect to the statutory Labor Code violations, as in *Elijuajuan, supra*, 210 Cal.App.4th at page 21, the critical dispute is not whether the parties' agreement describes Khalatian as an independent contractor—it does—"but whether [Khalatian was] in fact [an] independent contractor[] under the applicable legal principles." (*Ibid.*; see *Quinonez v. Empire Today, LLC* (N.D.Cal., Nov. 4, 2010, No. C 10-02049 WHA) 2010 WL 4569873, *4 [dispute over whether person is an employee or independent contractor turns on the otherwise governing law, not the parties' agreement].)  Khalatian's claims are not based on any contractual provision but on the definition provided in the otherwise governing law.  (See *Elijahjuan*, at p. 21.)  "Labor Code claims do not arise out of the contract but instead are distinct from rights under the Agreement[]." (*Id.* at p. 24.)  Therefore, the causes of action based on statutory Labor Code claims do not arise out of or relate to the parties' agreement.

Further, the breach of contract cause of action is not based on the parties' agreement but instead is based on a different agreement under which Khalatian claims third party beneficiary status.  The breach of contract cause of action is based on an alleged agreement between appellants and the City of Los Angeles.  No evidence in the record indicates that agreement contains an arbitration provision.  Appellants therefore fail to show that the cause of action for breach of contract falls within the definition of an arbitrable dispute.

In contrast, some of the causes of action fall within the parties' arbitration provision.  In his causes of action for unlawful termination and unfair business practices, Khalatian alleged his termination violated the parties' agreement.  Those causes of action alleging that appellants breached their agreement "arise out of" the agreement.  Therefore, they fall within the parties' contractual arbitration provision.

Finally, for the reasons explained by the majority, I agree that appellants did not forfeit the opportunity to arbitrate by waiting 14 months to move to compel arbitration.


FLIER, J.

3

Filed 6/9/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| VALO KHALATIAN, | B255945 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC485917) |
| v. | |
| PRIME TIME SHUTTLE, INC. et al., | **ORDER CERTIFYING OPINION FOR PUBLICATION** |
| Defendants and Appellants. | **[No change in judgment]** |

THE COURT:

The opinion in the above-entitled matter filed on May 15, 2015, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

There is no change in the judgment.

_____

BIGELOW, P. J.                                                    GRIMES, J.