Filed 1/4/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| PAUL GARCIA et al., | B296923 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC660723) |
| v. | |
| HARALAMBOS BEVERAGE CO., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Maren E. Nelson, Judge.  Affirmed.

Gordon Rees Scully Mansukhani, R. Scott Sokol, Matthew G. Kleiner, and Travis Jang-Busby for Defendant and Appellant.

Mara Law Firm, David Mara and Matthew Crawford; Cohelan Khoury & Singer and Jeff Geraci for Plaintiffs and Respondents.

# I. INTRODUCTION

Defendant Haralambos Beverage Co. appeals from an order denying its motion to compel arbitration, contending that there was insufficient evidence to support the trial court's finding that it had waived its right to arbitrate. We affirm.

# II. BACKGROUND

A. *Agreement to Arbitrate Employment Disputes*

Defendant, a beverage distributor, employed plaintiffs Paul Garcia and Pierre Atme as truck drivers. Since 2003, defendant's employee handbooks recited a policy that "any and all claims, disputes or controversies between employees and [defendant] shall be resolved by binding arbitration pursuant to the provisions of this policy, except as otherwise specifically prohibited by law. [¶] To the fullest extent permitted by law, this policy applies to all claims, disputes or controversies, of any kind whatsoever, including but not limited to those arising out of or related to an employee's hiring, employment, the terms and conditions of that employment, and the termination of employment . . . ."[1]

---

[1] The 2003 and 2010 versions of the handbooks stated that interpretation and enforcement of the arbitration policy would be governed by the California Arbitration Act. The 2013 handbook stated that the policy would be governed by the Federal Arbitration Act. The trial court found that the procedural provisions of the California Arbitration Act applied and defendant did not challenge that ruling on appeal.

On March 20, 2009, Atme executed an Employee Handbook Acknowledgement, Receipt, and Consent form (arbitration agreement) in which he "agree[d] that all claims, disputes and controversies of any kind whatsoever, between [him] and [defendant] including, but by no means limited to, those arising out of or related to [his] employment with [defendant], whether during or after that employment, will be submitted to binding arbitration to the fullest extent permitted by law, in accordance with the *Employment Arbitration* policy set forth in the Employee Handbook." On April 2, 2009, Garcia executed an identical arbitration agreement.

B.      *Lawsuit and Litigation Conduct*

On November 11, 2016, Garcia served his original complaint on defendant. On January 31, 2017, plaintiffs filed the operative amended putative class action complaint in Kern County Superior Court, alleging various violations of wage and hour laws. On March 7, 2017, the parties stipulated to transfer venue to the Los Angeles County Superior Court. On March 15, 2017, defendant filed its answer, asserting, among other defenses, that plaintiffs' claims were subject to an executed arbitration agreement.

On June 23, 2017, the trial court stayed the action to facilitate case management. The order precluded defendant from filing motions challenging jurisdiction and stayed discovery. The court's order also required the parties to file a joint status conference statement that included, among other things, the parties' positions on "[a]ny issues of jurisdiction, venue,

3

contractual arbitration/judicial reference that any party intend[ed] to raise."

The parties filed their joint status conference statement on November 2, 2017. Defendant advised that "'[a]t the moment, [d]efendant does not intend to raise [jurisdiction or contractual arbitration;] however it reserves the right to do so at a later time.'"[2]

At the November 9, 2017, initial status conference, the parties agreed to participate in classwide mediation and defendant did not express an intention to arbitrate plaintiffs' individual claims.

On February 20, 2018, the parties agreed to a protective order to facilitate the production of classwide information, data, and documents in anticipation of the mediation. Defendant produced 1,182 responsive documents, including plaintiffs' personnel files. Plaintiffs analyzed the information provided and retained a consulting group to create a classwide damages model and a financial expert to research defendant's assets and ability to pay a classwide settlement.

On March 15, 2018, the parties filed another joint status conference statement. Under the heading "JURISDICTION, VENUE, CONTRACTUAL ARBITRATION/JUDICIAL REFERENCE" (emphasis removed), defendant indicated: "At this time, [d]efendant does not intend to challenge jurisdiction, venue or contractual arbitration . . . . Defendant reserves the right to raise any of these at a later date if discovery should

_____

[2] The first joint status conference statement is not part of the record on appeal, but it was quoted by the trial court as part of its ruling.

4

reveal new facts or evidence, including its right to compel arbitration . . . ."

On March 21, 2018, the parties appeared for a post-mediation status conference and advised the trial court that the case had not settled. The court lifted the stay, set a hearing on a motion for class certification and a further status conference, and ordered the parties to file a joint status report by November 28, 2018.

The next day, plaintiffs propounded classwide discovery, including a document request for any arbitration agreements between plaintiffs and defendant. Defendant produced approximately 2,131 documents in response, including documents that it had previously produced informally.

On April 24, 2018, plaintiffs propounded further classwide discovery on defendant's affirmative defenses. Defendant asserted objections, but did not object to the discovery on the grounds that the parties had agreed to arbitrate their claims. The parties continued to meet and confer on discovery disputes and over the details of the *Belaire-West*[3] notice that would be sent to putative class members.

On June 29, 2018, defendant sent a letter to plaintiffs demanding arbitration and stating its intent to file a motion to compel arbitration if plaintiffs did not agree to arbitrate by July 6, 2018.

---

[3] *Belaire-West Landscape, Inc. v. Superior Court* (2007) 149 Cal.App.4th 554 (*Belaire-West*). In wage and hour class actions, a *Belaire-West* notice is sent to putative class members to inform them that their contact information will be disclosed unless they timely object to such disclosure in writing. (*Id.* at pp. 561–562.)

On July 3, 2018, plaintiffs filed a request for an informal discovery conference with the trial court to discuss, among other things, documents that were relevant to the *Belaire-West* notice process. On July 6, 2018, defendant filed its answer to the request, asserting that it had "recently discovered plaintiffs' executed arbitration agreements . . . [and] intend[ed] to file a motion to compel arbitration."

On August 14, 2018, the trial court held an informal discovery conference at which it ordered defendant to produce certain materials by August 24, 2018. The court also ordered the parties to complete the *Belaire-West* notice process by August 31, 2018. Finally, the court ordered: "If [defendant] intends to file a [p]etition to [c]ompel [a]rbitration, parties are to meet and confer first. If there is no agreement, the [p]etition to [c]ompel [a]rbitration may be filed and briefed. Counsel are to contact [the court] to clear a hearing date." On or about August 30, 2018, defense counsel contacted the court and received a hearing date of March 6, 2019, for the motion.

Between the end of August and early November 2018, the parties continued to meet and confer on discovery disputes and the *Belaire-West* notice process. On November 7, 2018, plaintiffs filed a motion to compel further discovery responses and for attorney fees, asserting that defendant had failed to comply with the trial court's August 14, 2018, order.

C.     *Motion to Compel Arbitration*

On November 20, 2018, defendant filed its notice of motion to compel arbitration and request for a stay. On November 27, 2018, plaintiffs filed their preliminary opposition,

6

asserting, among other things, that defendant had waived its right to arbitrate by its unreasonable delay and conduct inconsistent with the right to arbitrate, which misled and prejudiced them.

On January 16, 2019, defendant filed its memorandum of points and authorities in support of its motion to compel arbitration with supporting documents. Defendant submitted, among other exhibits, plaintiffs' executed arbitration agreements. It also submitted the declaration of its former human resources manager, Christine Shannon, in which she declared: "At the outset of this litigation, I searched for arbitration agreements signed by both [p]laintiffs but was unable to locate them in their personnel files. In late June[] 2018, while obtaining documents to produce to [p]laintiffs in response to their discovery requests after mediation failed, I discovered [the arbitration agreements] signed by each [p]laintiff and others . . . . I immediately provided them to [defense] counsel . . . ."

On February 13, 2019, plaintiffs filed their memorandum of points and authorities and supporting documents in support of their opposition to defendant's motion to compel arbitration.

The trial court held a hearing on defendant's motion on March 6, 2019, during which defendant asserted that it had not located copies of plaintiffs' signed arbitration agreements until June 2018. Defendant conceded, however, that at the time the lawsuit was filed, it had located documents confirming its policy of requiring employees to sign arbitration agreements and "the checklist[s] that showed what each employee had received, including the arbitration agreement . . . ."[4]

---

[4]     The trial court and defense counsel engaged in the following exchange:

On March 18, 2019, the trial court denied defendant's motion to compel arbitration. The court found that defendant knew, from the time it filed its answer, that it had an arbitration policy and failed to demonstrate that it conducted a diligent search for the signed arbitration agreements. The court also found that, even after locating the signed arbitration agreements, defendant continued to act in a manner that was inconsistent with the right to arbitrate. Finally, the court found that plaintiffs had been prejudiced by the delay by expending time and money engaging in classwide discovery and related disputes;

---

"The Court: Did you have an arbitration agreement that was part of [the] mandatory term[s] of employment?

"[Defense Counsel]: There were arbitration agreements at the time these [plaintiffs] were hired but, again, we didn't have those documents. They could not be located.

"The Court: I appreciate the fact that you didn't have signed documents from them. [¶] Did you have a policy that if you wish to work for [defendant], you are required to enter into an agreement to arbitrate?

"[Defense Counsel]: Well, yes, Your Honor. And that was in our papers. That was the general policy at that time.

"[The Court]: And that's in the documents you had when this action was filed, correct?

"[Defense Counsel]: Well, [defendant] certainly understood that they had that policy but, again, no signed agreements from the two plaintiffs in this case could be located.

"The Court: You did locate, though, if I'm correct, the documents that were the checklist that showed what each employee had received, including the arbitration agreement, correct?

"[Defense Counsel]: There were checklists that were located."

8

preparing and serving the *Belaire-West* notices to putative class members; and filing a discovery motion.

Defendant timely filed a notice of appeal.

## III.  DISCUSSION

### A.    *Legal Principles and Standard of Review*

"'Arbitration is not a matter of absolute right'" and it can be waived.  (*Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 991 (*Sobremonte*).)  "'In determining waiver, a court can consider "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party.'" [Citations.]"  (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 (*St. Agnes*).)  "No one of these factors predominates and each case must be examined in context."  (*Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 444 (*Lewis*).)  The three *St. Agnes* factors that are significant in the context of this case are defendant's actions inconsistent

with the right to arbitrate, its delay before seeking a stay, and the prejudice to plaintiffs.

"The question of waiver is generally a question of fact, and the trial court's finding of waiver is binding on us if it is supported by substantial evidence. [Citation.] 'We infer all necessary findings supported by substantial evidence [citations] and "construe any reasonable inference in the manner most favorable to the judgment, resolving all ambiguities to support an affirmance."' [Citation.] Reversal is not justified simply because the trial court could have potentially reached a different conclusion on the question of waiver. '[R]ather, we may reverse the trial court's waiver finding only if the record establishes a lack of waiver as a matter of law.' [Citation.]" (*Bower v. Inter-Con Security Systems, Inc.* (2014) 232 Cal.App.4th 1035, 1043 (*Bower*), italics omitted.)

B. *Analysis*

Defendant contends that insufficient evidence supported the trial court's finding that it waived its right to arbitrate. We disagree.

1. Delay Before Seeking a Stay

According to defendant, it acted reasonably in waiting to file the motion to compel until after it located the signed arbitration agreements in June 2018.

There is no dispute that defendant was aware of its right to arbitrate at the outset of litigation. Indeed, defendant asserted its right to arbitrate as an affirmative defense in its answer and

10

further "reserved" its right to arbitrate in the joint status conference statements. Defendant also concedes in its opening brief that it "was aware that its employee handbook required its employees to arbitrate all employment disputes with [defendant], and that it was customary for its employees to execute arbitration agreements."

"Under the California Rules of Court, rule 3.1330, a party petitioning to compel arbitration must state 'the provisions of the written agreement and the paragraph that provides for arbitration.' 'The provisions must be stated verbatim *or* a copy must be physically or electronically attached to the petition and incorporated by reference.' (*Ibid.*, italics added.) Thus, under this rule, unless there is a dispute over authenticity, it is sufficient for a party moving to compel arbitration to recite the terms of the governing provision." (*Sprunk v. Prisma, LLC* (2017) 14 Cal.App.5th 785, 793; *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 219.) We therefore reject defendant's contention that it was reasonable to wait until it located the executed arbitration agreements before filing its motion, particularly in light of its concession that at the outset of the litigation, it was not only aware of its policy requiring arbitration, but had located checklists that demonstrated both plaintiffs had received a copy of the arbitration agreement.

Moreover, substantial evidence supported a finding that the length of defendant's delay prior to filing its motion to compel arbitration and for a stay was unreasonable. Twenty-four months elapsed from the time defendant was served with Garcia's original complaint, on November 11, 2016, to when it filed its motion to compel arbitration, on November 20, 2018.

11

Twenty months elapsed from the time it asserted arbitration as an affirmative defense in its answer on March 15, 2017, to when it filed its motion. Even excluding the nine-month period during which the action was stayed pending mediation, from June 23, 2017, to March 21, 2018, the delay was still unreasonably long. (See, e.g., *Lewis, supra*, 205 Cal.App.4th at p. 446 [finding five-month delay unreasonable]; *Augusta v. Keehn & Associates* (2011) 193 Cal.App.4th 331, 338 [finding six-and-one-half-month delay unreasonable]; *Sobremonte, supra*, 61 Cal.App.4th at p. 996 [finding 10-month delay unreasonable].)

### 2. Actions Inconsistent With the Right to Arbitrate

We next consider whether defendant acted in a manner inconsistent with its right to arbitrate. Although defendant initially asserted arbitration as an affirmative defense, it subsequently represented in two status conference statements that it did not intend to arbitrate. Further, defendant argued that classwide arbitration was unavailable under the arbitration agreements because plaintiffs agreed to arbitrate their *individual* claims against defendant. Nonetheless, during the two years that elapsed between service of Garcia's complaint and the filing of defendant's motion to compel arbitration, defendant: agreed to a protective order to facilitate the production of classwide information; engaged in classwide mediation; responded to plaintiffs' discovery requests, including requests for classwide information; met and conferred with plaintiffs on classwide discovery disputes; participated in the classwide *Belaire-West* notice process; and participated in an informal discovery conference regarding documents relevant to the *Belaire-West*

12

notice process. Defendant's conduct related to classwide issues was inconsistent with its claimed right to arbitrate individual claims and strongly supported the trial court's finding that defendant acted in a manner inconsistent with its right to arbitrate.

Substantial evidence also supported the trial court's conclusion that defendant continued to act in a manner inconsistent with arbitration even after it located the arbitration agreements in June 2018. After that date, defendant continued to meet and confer with plaintiffs regarding discovery and the *Belaire-West* notice process. Defendant also participated in an informal discovery conference on August 14, 2018, at which it was ordered by the court to produce certain materials by August 24, 2018. Defendant apparently did not comply with that order, which caused plaintiffs to file a motion to compel discovery and request attorney fees. It was only then that defendant, on November 20, 2018, nearly five months after locating the signed arbitration agreements, filed its motion to compel arbitration.[5]

Defendant's citation to *Khalatian v. Prime Time Shuttle, Inc.* (2015) 237 Cal.App.4th 651 (*Khalatian*) is inapposite. The court in *Khalatian* reversed the trial court's finding that the defendants had waived their right to arbitrate by waiting 14

_____

[5] Defendant argues that the trial court erred by failing to consider that it stayed the action pending mediation. Mediation is not generally inconsistent with arbitration. (See *Zamora v. Lehman* (2010) 186 Cal.App.4th 1, 20.) But engaging in mediation on a *classwide* basis *is* inconsistent with the right to arbitrate *individual* claims. (*Bower, supra*, 232 Cal.App.4th at p. 1045.) In any event, we conclude that defendant continued to act in a manner inconsistent with its arbitration rights even after the stay was lifted on March 21, 2018.

months to file their motion. (*Id.* at p. 663.) The court found no waiver because: no depositions were taken and no discovery motions were filed; the defendants' demurrer and motion to strike were taken off calendar, not overruled or denied, and therefore the motion to compel arbitration was not filed as a last resort; and the trial was scheduled to commence more than a year later. (*Id.* at p. 662.)

Here, by contrast, defendant engaged in conduct related to classwide, rather than individual, issues. Moreover, defendant only filed its motion to compel arbitration after it failed to settle the classwide case and after it was served with plaintiffs' motion to compel discovery responses and for fees. Such acts support an inference that, unlike the defendants in *Khalatian,* defendant here raised arbitration as a belated strategy, if not as a strategy of last resort.

### 3. Prejudice to Plaintiffs

"Because of the strong policy favoring arbitration, prejudice typically is found only where the petitioning party has unreasonably delayed seeking arbitration or substantially impaired an opponent's ability to use the benefits and efficiencies of arbitration. [Citations.] Prejudice is not found where the party opposing arbitration shows only that it incurred court costs and legal expenses in responding to an opponent's pleadings and motions." (*Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1205.) On the other hand, "'[e]specially in class actions, the combination of ongoing litigation and discovery with delay in seeking arbitration can result in prejudice.'" (*Bower, supra,* 232 Cal.App.4th at p. 1046.)

14

Substantial evidence supported the trial court's finding that defendant's delay impaired plaintiffs' ability to realize the benefits and efficiencies of arbitration. During the two-year period of litigation, defendant agreed to participate in classwide mediation, which resulted in plaintiffs incurring additional expenses to retain experts to assess defendant's ability to pay a classwide settlement. Plaintiffs also expended time and resources propounding and pursuing classwide discovery, which was useful for their class claims, but not for their individual claims. And, plaintiffs incurred expenses in completing the *Belaire-West* notice process, which, again, was unnecessary for plaintiffs' individual claims. (See *Bower, supra,* 232 Cal.App.4th at p. 1047 ["[Plaintiff] incurred expenses attributable to [defendant's] discovery and its decision to pursue classwide resolution of the dispute. As a result of [defendant's] actions, [plaintiff] devoted time and energy to activities that had no bearing on an arbitration of [plaintiff's] individual claims."].) Finally, plaintiffs expended resources in filing a motion to compel further discovery responses and for attorney fees. On this record, substantial evidence supported the trial court's conclusion that plaintiffs were prejudiced by defendant's unreasonable delay in seeking arbitration of plaintiffs' individual claims.

## IV.  DISPOSITION

The order denying the motion to compel arbitration is affirmed.  Plaintiffs are entitled to recover their costs on appeal.


KIM, J.

We concur:


BAKER, Acting P. J.


MOOR, J.

16